## MERIDIAN LIGHT & RY. CO. v. DENNIS.*

(En Banc.    June 16, 1924.)

[100 So. 581.    No. 23607.]

1. MASTER AND SERVANT. *Motorman held not entitled to recover because of failure to provide for notice of turning on electric current.*

Where a street car was stopped on account of the electric current being shut off while a broken trolley wire was being repaired, and the motorman left the controller handle of the car in a forward position, or "in gear," and went forward to investigate the trouble, and, when the repairs had been completed, he received actual notice that the current would be turned on in a few moments, but did not return to his car, and the car started forward when the current was turned on, and the motorman was injured in endeavoring to board the car and shut off the power and apply the brakes so as to avoid a collision with a car standing a few feet ahead on the same track, *held* that, since the injured motorman had actual notice that the current had been or would immediately be ordered on, no recovery for the injury can be had on account of any failure to provide a sufficient system of signals to notify employees when the current would be turned on.

2. MASTER AND SERVANT. *Motorman held not entitled to recover for injuries under doctrine of last clear chance.*

In such case no recovery can be maintained under the doctrine of the last clear chance, where the uncontradicted testimony clearly shows that the motorman on the front car used every possible effort to reach the controller of his car and move it forward after he discovered that the rear car was moving forward and the injured motorman was in a position of peril.

3. MASTER AND SERVANT. *Peremptory instruction for defendant held required notwithstanding statutory presumption of negligence.*

Where all the facts and circumstances under which the injury was inflicted are fully disclosed by the evidence, the *prima-facie* presumption of negligence created by section 1985, Code of 1906 (section 1645, Hemingway's Code), yields to the facts; and, where the uncontradicted evidence clearly exculpates the defendant of negligence in reference to the injury, a peremptory instruction for the defendant should be granted.

ETHRIDGE, J., dissenting.

---

*Headnote 1.    Master and Servant, 26 Cyc, p. 1156;    2.    Master and Servant, 26 Cyc, p. 1231;    3.    Master and Servant, pp. 1410, 1490.

APPEAL from circuit court of Lauderdale county.
HON. J. D. FATHEREE, Judge.
Action by Sam R. Dennis against the Meridian Light
& Railway Company. From a judgment for plaintiff,
defendant appeals. Reversed, and judgment rendered.

*Bozeman & Cameron,* for appellant.

In order for liability to be fastened upon the defend-
ant, it is necessary that its negligence should be the
proximate cause of the injury.

Where, as in this case, it is shown by the testimony
that defendant was not guilty of any negligence, either in
creating the perilous situation or in causing plaintiff to
leave his place of safety and put himself in a position
of danger, the plaintiff cannot recover. *Billingsly* v.
*I. C. R. R. Co.,* 100 Miss. 612 (624).; *Wright* v. *Atlantic
Coast Line,* 110 Va. 670; 20 R. C. L. 132, section 109.

If the perilous situation, and the act of the plaintiff
in exposing himself to danger, were not results reason-
ably to be anticipated by defendant from the turning on
of the current as soon as the wire was repaired, then,
the defendant is not liable. *Chattanooga, etc., Co.* v.
*Hodges,* 109 Tenn. 331 (339); *Saylor* v. *Parsons,* 122
Iowa, 679.

And we submit that the undisputed testimony shows
that both of these conditions were contrary to the usual
practice and common experience of defendant and its
employees in handling street cars at times when the cur-
rent was interrupted by broken wires; and according to
this usual practice and common experience, plaintiff's
car would not have moved of its own accord with no one
in charge, and the danger of collision would not have been
created but for the plaintiff's own negligence in leaving
his car in gear and with no one in charge.

If the plaintiff's voluntary act in placing himself in
a position of danger, after he saw and realized the dan-
ger of the collision, was the intervening and proximate

cause of his injury—and we submit that it was, under the testimony—then he cannot recover. *Howell* v. *Railroad Co.*, 75 Miss. 242; *Railroad Co.* v. *Sneed*, 84 Miss. 252; *Chattanooga, etc., Power Co.* v. *Hodges*, 109 Tenn. 331; *Seale* v. *Gulf, etc., Ry. Co.*, 65 Texas 274.

In order to justify one in risking his life, or serious injury, in rescuing another person from danger, the danger threatened must be imminent and real and not merely imaginary. *Devine* v. *Pfaelzer*, 227 Ill. 255.

One may not voluntarily expose himself to danger to prevent injury to property merely. 20 R. C. L. 133, section 110; *Foll* v. *N. C. R. Co.*, 15 Hun. 496; 80 N. Y. 647. Where the dangerous situation is brought about by the plaintiff himself, he is not warranted in exposing himself to danger to avoid the consequences thereof. *Atlanta, etc., Ry. Co.* v. *Leach*, 91 Ga. 419; *White* v. *Chicago*, 120 Ill. App. 607.

*M. W. Reily,* for appellee.

The sufficiency of testimony; contradictions in the testimony; reasonable inferences to be drawn from established facts are questions for the jury, and it is only in those rare cases where there is no testimony to warrant a verdict that a case will be reversed because of insufficiency of testimony. *Campbell* v. *M. & M. R. R. Co.*, 89 So. 1; *A. & V. R. R. Co.* v. *Kelly*, 88 So. 707; *Hinds* v. *Moore*, 87 So. 1; *Gulf Ry. Co.* v. *Boone*, 82 So. 335; *Turner* v. *Souther R. R. Co.*, 73 So. 62; *Gulf R. R. Co.* v. *Prince*, 79 So. 62; *Gillo Valley, etc.,* v. *Hall*, 232 U. S. 94, 58 L. Ed. 521; *Great Northern R. R. Co.* v. *Donaldson*, 62 L. Ed. 617, 264 U. S. 121.

Where the facts are conceded but inferences of negligence are doubtful depending upon the general knowledge and experiences of men, the question of negligence is for the jury. *Southern Railroad Co.* v. *Floyd*, 55 So. 287.

It is the duty of the master to furnish some system of warning to the servant in order that the servant may protect himself against perils which arise in the performance of his duty. *I. C. R. R. Co.* v. *Price,* 72 Miss. 363, 18 So. 415; *Mississippi Central Oil Co.* v. *Ellis,* 72 Miss. 191, 17 So. 214; *Edwards* v. *Haines-Walker Lumber Co.,* 74 So. 284; *Seafood Co.* v. *Alvez,* 77 So. 857; *Coast Ship Co.·v. Yerger,* 81 So. 797.

Where one acts in the face of sudden peril or emergency, he is not held to that same calm judgment which he would otherwise be expected to exercise. 18 R. C. L. 654, and 134; *Armstrong* v./*G. & S. I. R. R. Co.,* 115 Miss. 698, 76 So. 624; *Capitol Oil Works* v. *Block,* 70 Miss. 8, 12 So. 26; *White* v. *Railway Co.,* 72 Miss. 12, 16 So. 248; *I. C. R. R. Co.* v. *Price,* 72 Miss. 862, 18 So. 415; 6 A. L. R. 1242; 10 A. L. R. 1152; 9 A. L. R. 223; 26 A. L. R. 864.

When servant acts to save life or property and the master's negligence has contributed to the danger threatened to such life or property, the master is liable for the injuries sustained by the servant. 18 R. C. L. 655; 20 R. C. L. 131, 133; *Chattanooga Light & Power Co.* v. *Hodges,* 109 Tenn. 331, 97 Am. St. Rep. 844; *Pennsylvania Co.* v. *Roney,* 89 Ind. 453, 46 Am. Rep. 173; *Lineman* v. *Sampson,* 126 Mass. 506, 30 Am. Rep. 692; *Maryland Steel Co.* v. *Mooney,* 71 Am. St. Rep. 441.

Even though the servant were guilty of negligence and as a result of that negligence found himself in a position of peril, yet if the master, after discovering the position of peril negligently failed to exercise reasonable care to avoid injuring him, the master is liable for the injury. 20 R. C. L. 138; *Fuller* v. *I. C. R. R. Co.,* 56 So. 783, 100 Miss. 705; *Southern R. R. Co.* v. *Floyd,* 55 So. (Miss.) 287; *Alabama Power Co.* v. *Bradley,* 93 So., (Ala.) 73; *Southern Express Co.* v. *Roseman,* 91 So. (Ala.) 612.

If injury results in whole or in part from the negligence of the master, the servant shall not be held to have as-

sumed the risk. Laws 1914, chapter 156; Hemingway's Code, section 504; *Walker Bros.* v. *Nix,* 76 So. 143; *Edwards* v. *Haines-Walker Lumber Co.,* 74 So. 284; *Seafood Co.* v. *Alvez,* 77 So. 57,

Mere proof that the servant was injured by the operation of a street car, required that the case be submitted to the jury. Laws 1912, chapter 215; *Alabama R. R. Co.* v. *Thornhill,* 106 Miss. 387, 63 So. 674.

*Bozeman & Cameron,* for appellant in reply.

We submit that no necessity for such a rule as plaintiff is contending for was shown. There was no complexity, or difficulty or obscurity shown, and without this no rule would be necessary. *Tatum* v. *Crabtree,* 130 Miss. 462, 94 So. 449; 18 R. C. L. 573.

Whether or not the evidence is sufficient to show a case in which the duty to make a certain rule rested on the employer, is a question of law for the court. *T. & N. R. R. Co.* v. *Echols,* 87 Texas 339; *Larsen* v. *O'Rourke Engr. Const. Co.,* 102 C. C. A. 51, 178 Fed. 541; *Jemnienski* v. *Lobdell Carwheel Co.,* 5 Pa. 385, 63 Atl. 935; *American Bridge Co.* v. *Valente,* 7 Pa. 370, 73 Atl. 400; *McCafferty* v. *Maine C. R. R. Co.,* 166 Me. 284, 76 Atl. 865; *Wagner* v. *N. Y. C., etc., R. R. Co.,* 78 N. Y. Supp. 696; *Moore Lime Co.* v. *Richardson,* 95 Va. 336, 27 S. E. 334; 3 Labatt's Master & Servant (2 Ed.), secs. 1115, 2953.

*Plaintiff had Actual Notice.* Certainly, he cannot complain of the absence of notice, when, by his own proof, he had full and perfect actual notice that the current would be promptly turned on.

*Last Clear Chance.* Realizing, apparently, his utter failure in the attempt to establish the first ground of negligence asserted, plaintiff, in desperation falls back on the Last Clear Chance doctrine. His act in invoking this doctrine amounts to an admission that the proximate cause of his injury was his own act. In other words,

plaintiff seems to say: "I concede my own folly, but I seek tribute from you because you had opportunity to relieve me of its results and you failed to seize it."

The great bulk of the decisions have to do with the failure of drivers of engines, or street cars, to stop them upon discovery of peril of some one on the track, helpless to extricate himself. The doctrine is classified as a phase of the subject of contributory negligence. This is the classification followed in all cases and textbooks we have read, with one exception. See in this connection Mississippi Digest—Negligence, Key No. 83; Ib. Railroad Companies, Key No. 390.; Ib. Street Railroads, Key No. 103; 1 Thompson on Negligence, sec. 232, et seq.

If the doctrine, therefore, be properly assigned to the category of contributory negligence, it cannot be invoked except in a case where the plaintiff and the defendant are both negligent, and the latter, while negligent, has the opportunity to avoid the consequence of plaintiff's negligence. Under such a test, the plaintiff in the present case would gain nothing by relying on the Last Clear Chance doctrine. He would have to show that both he and the street railway were negligent and that the latter had opportunity, despite the negligence of both, to relieve him of the consequences of his own act. Plaintiff is, therefore, relegated to proof of the negligence originally charged, which, as we have shown above, he has failed to make. In any event, it certainly cannot be charged that Rollins was negligent in placing plaintiff in his position of peril. Under the conception of the Last Clear Chance doctrine, now under consideration, the plaintiff would be forced to contend that the joint negligence of himself and Rollins placed him in a position of peril and that thereupon Rollins had failed to exercise proper care to accomplish the plaintiff's extrication. Of course, there is no proof of this sort at all. We submit, also, that the doctrine has no possible application to a man occupying toward the plaintiff a passive relation like Rollins occupied in this case.

The vast majority of the cases as stated, involve the driving of a railroad engine, or some similar dangerous instrumentality, over a person whose presence in a position of peril was discovered in time to stop the instrumentality and avoid the injury. As typically illustrative of this proposition see *Jackson E. L. & Power Co.* v. *Carnahan*, 95 Miss. 66, 48 So. 617; *Fuller et al.* v. *I. C. R. R. Co.*, 100 Miss. 705, 56 So. 783.

The doctrines we are contending for are well discussed by Mr. Thompson in his Commentaries on the Laws of Negligence in Vol. 1, pars. 226 to 248.

Argued orally by *A. S. Bozeman*, for appellant, and *M. W. Reily*, for appellee.

COOK, J., delivered the opinion of the court.

This action is by Sam R. Dennis against the Meridian Light & Railway Company, appellant, for damages for personal injuries alleged to have been sustained by him while in the employ of the appellant company, and from a judgment in favor of the plaintiff for seven thousand five hundred dollars the railway company prosecuted this appeal.

The facts in this record, in so far as they are material to a decision of this case, are substantially as follows:

At the time of the injury the appellee was employed by the appellant as "barn man," which position he had held for three months, and previous to that time he had been employed by the appellant as lineman and trouble man. The appellee's duties required him to do the light repairs on cars, and other work around the barn, and also to act as motorman in carrying a car to the end of the line each morning and afternoon for the purpose of transporting other employees to and from their work, and also, when the occasion required, to run a car over the line of the railroad for the purpose of removing

broken trolley wires, rerailing cars, and correcting other troubles. On the date of the injury the appellee was directed to proceed from the car barn to a place on the street car line in the city, where a street car had been derailed, for the purpose of assisting in derailing the car. He took one of the street cars at the barn, himself acting as motorman, and proceeded toward the place of derailment. When near the corner of Eighth street and Twenty-Third avenue the electric current on the trolley wire went off, and appellee stopped the car which he was driving by applying the brakes. There were two other street cars stopped on the track in front of appellee's car, the distance between the front car and the middle car being about twenty feet, and the distance between the middle car and appellee's car being estimated at from twenty to thirty feet. The appellee testified that when he stopped his car he partially released the brakes, and left his car and went forward to find out the nature of the trouble ahead, leaving no one on the car. He further testified that he left the door to the vestibule of this car open; that there is located in this vestibule a controller through which the electric motive power is transmitted; that this controller has on it a metallic handle by the use of which the motorman operates the car; that this controller handle may be pushed to the right around a circle, and thereby the electric current will be turned on, while if it is turned to the left the current is entirely shut off; that there is also on this controller a reverse lever which must be placed in a forward position before the car can be moved forward, and when this reverse lever is in neutral position the car cannot be moved forward; that this reverse lever and the controller handle may be removed entirely when the reverse lever is in neutral position; that when he left his car he did not remove either the controller handle or the reverse lever; that the reverse lever was left in a forward position, but he did not think he left the controller in a forward position, or in gear, to use a well-understood expression.

He further testified that the electric current may be entirely cut off from the car by moving the handle of a switch which is located over the motorman's head in the vestibule of the car, or by removing the trolley from contact with the trolley wire, and that he did neither of these things.

The appellee further testified that he went forward to a point near where the linemen were repairing a broken trolley wire; that when this repair was completed the superintendent of the company directed him to go to a telephone and order the employees at the power house to turn the power on; that he went to a telephone and gave the order, but they refused to obey the order, for the reason that, under the rules of the company, the power would be turned on only when ordered by the employee who had ordered it turned off; that he reported this refusal to the superintendent; that the superintendent then went toward the telephone, and he, the appellee, went towards his car, which was standing sixty or seventy feet away; that he stopped about thirty feet away from his car, and talked for a minute or two with Mr. Rollins, the motorman on the car which was standing immediately in front of his car; that when he was fifteen or twenty feet from his car he noticed it moving forward; that he then ran to the door of his car, and, finding it closed, tried to get it open; that, failing in this, he ran around in front of the car and climbed upon the drawhead, and reached through the front window and shut off the controller by moving the handle into the neutral position, and partially applied the brakes, when his car struck the car ahead, catching his leg between the cars and injuring him. The appellee further testified that his car was a light car about twenty-five feet long, while Rollins' car immediately ahead was a heavy, open, summer car, about fifty feet long; that when his car started forward Rollins was standing in the rear of this long car, and that when he (the appellee) ran to the door of his car Rollins ran toward the front end of his

car, and that the speed of appellee's car constantly increased until he shut off the power and partially applied the brakes.

For the defendant, Rollins, the motorman on the middle car, testified that when the power came on, indicated by the lights on his car coming on, the appellee was standing on the sidewalk some feet away from his car; that he (Rollins) was sitting in his car nearer to the front than the rear; that when the power came on he heard appellee's car start forward; that he jumped up and started to the controller of his car for the purpose of endeavoring to move his car forward to prevent appellee's car from running into his if possible; that when appellee's car was five or six feet away from his car he saw the appellee jump up to the front window of his car; that he tried to reach his controller and start his car forward, but before he could do so appellee's car struck his, the collision occurring just as he reached the platform of the car and before he could do the things necessary to start the car, which, he testified, was a heavy one, and had just entered a curve.

The appellee's declaration, which was in four counts, set forth in great detail the facts leading up to the injury, and alleged that it was the duty of the appellee, under the terms of his employment, to look after the car which had been intrusted to him, and that his action in jumping on the front of the moving car in an effort to stop it was prompted by a desire to prevent injury to the property of defendant and to the persons on the car ahead, and that because of the peril to the property and passengers appellee failed to appreciate the danger incident to his act, and the acts of negligence charged, and upon which appellee seeks an affirmance of the judgment, may be summarized as follows:

First. That the defendant had promulgated no rule or method of advising appellee and its other employees just when the electric current would be turned into the wire.

Second. That the defendant turned the current of electricity into the trolley wire after it was repaired without giving any notice thereof to the plaintiff, although the defendant and its superintendent knew that if the current was turned into the wire without notice to appellee and other employees of defendant there was great danger that cars standing upon the tracks would start forward and collide with each other, and endanger both the property of defendant and the lives of its employees and passengers.

Third. That Rollins, the motorman on the car next ahead of the car in charge of the appellee, saw the perilous position of the appellee while leaning in the window of said car and attempting to put the brakes on, and that Rollins could have easily moved his car forward and avoided the injury to appellee, but that he negligently failed to do so.

There was testimony to the effect that the method of notifying the motorman when the current came on after it had been turned off was for the motorman to turn the light switch on the car so that the lights would shine when the current came on; but, conceding for the sake of argument that this method was insufficient, and that the failure of the defendant to have a better system of signals would render it liable to an employee who was injured on account of this failure and on account of not having sufficient notice that the current was to be turned on, this cannot aid the appellee, for the reason that he had actual notice of the fact that the current was to be turned on at any moment. The appellee was an experienced lineman, having had seven years' experience as lineman and trouble man for the defendant, and one of his duties in that connection had been to repair and handle broken trolley wires and interruped electric currents, the thing that was being done at the place of the accident, and for the completion of which the appellee and the cars were waiting. The appellee must have known from his long experience in that line of work that as

soon as the repairs were completed on the broken trolley wire the current would be turned on so that the delayed cars could move. Aside from that, however, the appellee had actual notice. Acting under the direction of the superintendent the appellee had just a few moments before attempted to have the power turned on by telephoning to the power plant, and had failed for the reason that the employees at the power plant refused to recognize his authority so to do. He had reported this failure to his superior, and had seen the superintendent of defendant company go to a telephone to order the power on. With this knowledge he did not go promptly to his car, but stopped some distance away to talk to another employee. No one except himself was in a position to know that the appellee had left his car so that it would move forward when the current was turned on, and no system of signals could have been more effective in warning the appellee to take any precautionary steps that might be necessary than was the actual notice that he already had, and under these facts no recovery can be had on account of any failure to provide a system of rules or signals.

The appellee next contends that the judgment should be sustained under the doctrine of the last clear chance, in that the motorman Rollins negligently failed to move his car forward after he discovered appellee's position of peril, and appreciated that he could not extricate himself. Conceding for the purpose of this decision that this doctrine applies to the facts in evidence here, there is no testimony in the record tending to show that this motorman was guilty of negligence in this regard, or from which the inference of negligence may be drawn, and the verdict cannot be sustained on this ground. If Rollins' testimony is accepted, and it is uncontradicted by any testimony or any fact or circumstance in evidence, he did not fail in any possible duty which he owed to appellee after he discovered his position of peril, and was guilty of no negligence in failing to move his car forward after he discovered that appellee's car was mov-

ing toward his car. Rollins testified that when the appellee first jumped on the front of the car and into a place of danger there was only five or six feet between the on-coming car and the stationary car, and that he made every possible effort to reach his controller and start his heavy car before the impact, but failed in his effort so to do. The appellee's testimony, when analyzed, not only is not in conflict with that of Rollins, but rather supports it. According to his testimony his car was not over thirty feet behind Rollins' car at the time it started forward. At that time the appellee was about thirty feet from the car. He ran this distance, first going to the door and trying to gain admittance there. Having failed to open the door he then ran around and jumped onto the drawhead. To accomplish these things an appreciable length of time had necessarily elapsed, and the appellee testified that all the while his car was going forward at a continuously increasing rate, but when he was pressed to state how near his car was to the Rollins car at the time he jumped between them, he repeatedly answered: "I don't have any idea." The testimony of Rollins as to his efforts to avoid the injury is uncontradicted, and is entirely reasonable and in accord with the other facts and circumstances in evidence, and we do not think the verdict can be sustained on the ground of negligence on his part.

Finally, the appellee contends that the statute making proof of an injury by the running of a street car *prima-facie* evidence of negligence in reference to such injury required the submission of the case to the jury. Section 1645, Hemingway's Code.

All the facts and circumstances under which the injury was inflicted are fully shown in the evidence, and this presumption of negligence created by the statute must yield to the facts, and we think the facts, which are undisputed, clearly exculpate the defendant company of negligence in reference to this accident, and that,

under the facts, the peremptory instruction requested by the defendant should have been granted.

The judgment of the court below will therefore be reversed, and judgment entered here for the appellant.

*Reversed and judgment for appellant.*

ETHRIDGE, J., (dissenting).

The appellee testified that the railway company gave him no instructions with reference to the operation of street cars where there was a break in the wire and the necessity thereby to stop cars and repair the wire, and that he did not know of the custom or rule of the company that gave notice that the wire was repaired by the coming on of the lights, which indicated that the current had been turned and was not an indication that the current was to be turned on. He testified that there was a signal blown at the power plant whenever the wire was broken and it was necessary to turn the current off. He testified that they gave him no instruction as to how to disconnect the electricity from the car so that it would not move the car and still would light the car. In other words, he had no instruction as to the rule of the company or custom of the company at all in reference to the matter here involved. He did have some limited experience in operating the car under ordinary conditions, but was not acquainted with the methods of operation where it was necessary to cut the power off and repair the break in the wire. There is nothing in the record to show that he had any such knowledge, and he testified that he did not have it. There is nothing to show that he knew the custom of the company. When the superintendent directed the appellee to go and ordered the power turned on he was informed that it would not be turned on except on the order of the person who ordered it cut off, and there is nothing to show that he knew the power would be turned on immediately, and that no signal would be given. The proof was ample for the plain-

tiff to sustain the verdict of the jury on this allegation of the plaintiff as to the negligence of the company.

As to the last clear chance proposition, I also think there was sufficient proof to carry the case to the jury. The plaintiff testified that he was talking to the motorman on the car ahead, and saw his own car begin to move, and that he ran to the car. The facts are sufficient in my judgment to show that the motorman on the car ahead also saw the car approaching and knew that it was unattended and knew the danger of collision, and that reasonable prudence should have caused the motorman to move his own car so as to diminish the force of collision, or if he could to prevent collision at all. The plaintiff's testimony I think shows clearly that, if the conductor on the car ahead had promptly attempted to move his car, the accident could have been avoided.

I think the majority opinion proceeds upon an assumption that the plaintiff had knowledge of the operation and condition and practices in such cases, which proof wholly fails to show that he did have and which he testifies that he did not have. Consequently, I think the question of liability was for the jury.