ILLINOIS CENT. R. CO. *v.* GATIS.

[31 So. (2d) 902.  No. 36423.]

(Division B.  Sept. 22, 1947.)

Cowles Horton, of Grenada, Chas. A. Helsell and Vernon W. Foster, both of Chicago, Ill., and Lucius E. Burch, Jr., and Jesse E. Johnson, Jr., both of Memphis, Tenn., for appellant.

A. M. Carothers, W. B. Nichols and W. H. Fedric, all of Grenada, for appellee.

Argued orally by **Cowles Horton**, for appellant.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

In the Circuit Court of Grenada County appellee was awarded judgment against appellant for damages, allegedly the proximate result of fright and nervous shock which she sustained while a guest in a car, owned and driven by her sister over a crossing over appellant's track on the Riverdale-Grenada-Hardy Road.

At the conclusion of the testimony, appellant requested that the jury be instructed peremptorily to find for it, which motion was by the trial court overruled. Appellant also filed a motion for a new trial on several grounds, among them the refusal of this peremptory instruction. A new trial was denied, and the case appealed to this Court.

Several errors are assigned here as having been committed in the circuit court, including the overruling of the two motions, supra. Some of the assignments appear

to us to be justified, but we think that only the action of the court in refusing the peremptory instruction and overruling the motion for a new trial justify discussion, in view of the conclusion we have reached.

The declaration charged that it was the duty of appellant railroad company to keep the crossing involved in the accident in a reasonably safe condition for the public using the highway intersecting the railroad there. The question is, Does the evidence meet the burden imposed on plaintiff to establish that appellant failed to use reasonable care to keep the crossing in a reasonably safe condition for public travel? It was also alleged in the declaration that "there was a hole in the track of defendant at aforesaid crossing on the right side going East, the plank or board across defendant's track having been worn out or torn off, leaving a cavity, or depression, of four or five inches in depth, which occasioned and caused the auto to stall and stop."

A heavy passenger train struck and demolished the car after appellee, her two sisters, and her own children and those of her sister who was driving the car, had escaped therefrom. There is testimony from this latter sister that she stalled the car because she fed it too little gas; plaintiff testified it was stalled because her sister was "nervous or something." There is in the record, however, from both sisters and others, testimony as to a hole or depression. It was also testified that none existed. At the time, and as a result of the incident, which occurred on May 31, 1945, appellant claimed to have been frightened and rendered highly nervous, culminating on June 13th, subsequently, in a miscarriage.

The jury accepted the view, from their verdict, it appears, that there was a hole in the crossing, and that the car stalled because the engine went dead as the front wheels caught in the hole. There was a controversy, as stated, as to whether there was a hole in the crossing sufficient to produce the stalling of the car.

In addition to the witnesses who testified orally, photographs of the scene were taken by a capable and qualified photographer, whose equipment and ability were not challenged, and the faithful reproduction of the condition of the crossing thereby portrayed was not sought to be, and was not, discredited. The evidence was admitted, and the photographs are before us. They do not reveal any hole or depression that would prevent this crossing from being reasonably safe for the use of the traveling public.

The train was in good order, the whistle was blown as required, and had not the car stalled, it could have gotten across the track safely. No one was hurt by the train, and the issue is solvable by the inquiry, as we have said, whether there was such a hole there and then on the crossing sufficient to establish negligence on the part of the railroad company with reference thereto. The photographs mentioned were taken in three different positions with reference to the crossing: One in the center of the track looking east, toward the alleged location of the hole; another in the center of the track looking north, giving a complete view of the situation; and the third, on a bridge within 20 feet of the track, looking toward it. The car crossed this bridge and then ascended the incline leading up to the crossing on the right-of-way. We have most carefully considered all of the evidence and in like manner examined the pictures.

In Mobile & Ohio Railroad Company v. Bryant, 159 Miss. 528, 132 So. 539, 541, we had before us a comparable problem, and in that case we said: "However, there are five photographs, taken on the day of the accident—the said photographs being manifestly excellent and perfect in clear reproduction, even to the slightest detail, and look upon the said crossing from every angle or view point— which disclose beyond any doubt that this crossing is not within the class to be termed much used, frequently used, or crowded, as the law understands those terms in the con-

nection here involved. These photographs disclose the facts to us by way of demonstration, and we apply the law to the facts thus demonstrated—any verdict to the contrary notwithstanding.''

So, here, the reproduction by accurate photography, from a proper camera, efficiently placed, and operated by a competent photographer, all reveal no condition of the crossing, rendering it not reasonably safe for travel.

The facts in this case, when examined in the light of the law, therefore, were not sufficent to raise an issue for the jury, or sustain a verdict by the jury for appellee, and the requested peremptory instruction should have been granted appellant, and for the errors in refusing it and denying a new trial therefor, we must and do reverse the trial court and render judgment here in favor of appellant.

We do not deem it necessary to enter upon a discussion here or to decide whether or not mere fright and nervousness, without contemporaneous physical injury, would justify awarding damages, in the absence of willful wrong: because, first, our conclusions above dispose of the case; and, second, because of the failure of the proof sufficiently to show causal connection with negligence by appellant. We prefer not to commit ourselves, therefore, at the present, upon this issue.

In view of what we have stated, we reverse the trial court and render judgment here for appellant.

Reversed and judgment here for appellant.