Leonard **STAPLETON** et al., Appellants,

v.

**LOUISVILLE &·NASHVILLE RAIL-
ROAD COMPANY**, Appellee.

No. 17271.

United States Court of Appeals
Fifth Circuit.

April 15, 1959.

Rehearing Denied May 22, 1959.

Jason H. Floyd, Gulfport, Miss., for appellants.

W. B. Hand, Mobile, Ala., S. E. Morse, Gulfport, Miss., C. B. Arendall, Jr., Mobile, Ala., Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

The question presented here is whether the court below committed reversible error in granting a peremptory instruction in favor of the Railroad Company in a suit brought by the beneficiaries of Allen Stapleton, who was killed while sitting on the end of a crosstie near a path across the railroad in the City of Pass Christian, Mississippi. Alleging that the train which killed Stapleton was being operated at an excessive rate of speed, that no sufficient warning of its approach was given, that no proper lookout was being maintained, and that proper steps were not taken to protect him after his peril was discovered, the appellants claim that the evidence presented a question for jury decision. Appellee Railroad Company, on the other hand, charges that deceased was a trespasser or bare licensee upon its track at the time he met his death, and that the evidence failed to show that the Railroad Company was guilty of willful, wanton or gross negligence; and that, under these circumstances and regardless of the status of deceased, there was no evidence of actionable negligence to be submitted to the jury. The trial court took this view and a careful reading of the evidence convinces us of its correctness.

Appellants' main reliance is on the Mississippi Prima Facie Statute § 1741 of the Mississippi Code of 1942, Vol. 2 Recompiled.[1] In making out their case they relied on the testimony of the witness Easterling, who arrived at the place where deceased's body was lying a short time after the train had stopped. The only evidence of injury he noted was that

blood was coming from deceased's left ear. His body was lying on the south side of the railroad track and between twenty and thirty feet from the footpath. It is not free from doubt whether this evidence made out a case of injury or death by a running train under such cases as New Orleans & N. E. R. Co. v. McCraney, 1923, 132 Miss. 332, 96 So. 683, but this question is rendered of no moment since the evidence subsequently placed in the record by the railroad company supplied whatever deficiency there was in the proof of the facts attending the accident.

The effect of the Mississippi Prima Facie Statute has been clarified and limited since the Supreme Court of the United States, Western and Atlantic R. v. Henderson, 1929, 279 U.S. 639, 643–644, 49 S.Ct. 445, 447, 73 L.Ed. 884, declared unconstitutional a similar statute of the State of Georgia. There, the Supreme Court referred to the Mississippi statute and its decision upholding it[2] and differentiated the Mississippi statute in these words:

"Each of the state enactments raises a presumption from the fact of injury caused by the running of locomotives or cars. The Mississippi statute created merely a temporary inference of fact that vanished upon the introduction of opposing evidence. Gulf, M. & N. R. Co. v. Brown, 138 Miss. 39, 66, 102 So. 855 et seq.; Columbus & G. Ry. Co. v. Fondren, 145 Miss. 679, 110 So. 365."

Thereafter, the Supreme Court of Mississippi, in New Orleans & G. N. R. R.

1. "In all actions against railroad corporations and all other corporations, companies, partnerships and individuals using engines, locomotives, or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever power, and running on tracks, for damages done to persons or property, proof of injury inflicted by the running of engines, locomotives or cars of any such railroad corporations or such other corporation, company, partnership or individual shall be prima facie evidence of the want of reasonable skill and care of such railroad corporation, or such other corporation, company, partnership or individual in reference to such injury. This section shall also apply to passengers and employees of railroad corporations and of such other corporations, companies, partnerships and individuals."

2. Mobile, J. & K. C. R. v. Turnipseed, 1910, 219 U.S. 35, 31 S.Ct. 136, 55 L. Ed. 78.

Co. v. Walden, 1931, 160 Miss. 102, 133 So. 241, reviewed its cases in the light of this Supreme Court decision and held in effect that, when the facts surrounding the injury are in evidence, the presumption disappears and negligence must be determined from such facts. A short time thereafter the Mississippi Court referred to its Walden decision in Louisville & N. R. Co. v. Cuevas, 1932, 162 Miss. 521, 139 So. 397, and amplified this holding limiting the application of the prima facie statute.

The cases decided by the Supreme Court of Mississippi since said decision are legion.[3] It has, in a long line of cases, held that it was the duty of the trial court to grant a peremptory instruction for the railroad company where the prima facie case was satisfied by the disclosure of the facts and the facts failed to show negligence.[4]

■ A careful reading of the record in this case in the light of the contentions of the parties in their briefs convinces us that the facts were fully disclosed and that, accepting as true those which were undisputed and construing those which were disputed most favorably to the appellants, no negligence on the part of the railroad company was shown. Those facts may be thus summarized:

A fast passenger train of appellee was passing through the incorporated town of Pass Christian some thirty or forty-five minutes after midnight; the engineer and fireman, keeping a lookout ahead of the engine, saw an object on the end of the crossties which turned out to be Stapleton; high weeds and grass revealed by the photographs taken the next day corroborated by testimony, obscured the view to some extent and the engineer first saw deceased when the engine was somewhere between 200 and 368 feet away. The engineer immediately applied the brakes in emergency and sounded an alarm with the whistle; the bell was ringing and had been for some miles; the train was proceeding at a speed upwards of sixty miles per hour, and all of the mechanical means for stopping the train were in good condition. Nevertheless the train struck deceased, sitting on the end of a crosstie with his head in his lap supported by his hands, and ran a distance of from 1600 to 1900 feet, this being the shortest distance in which so equipped, under the existing circumstances it could be stopped. Deceased never moved despite the loud noise of the train, of the bell, and of the blasts of the whistle.

The evidence failed to show how Stapleton got to the point where he was killed. He was last seen sitting at the bar in a restaurant several blocks away a little after midnight. Easterling, witness for appellants, had joined him there about an hour earlier, and deceased drank two beers during that interval. How many drinks he had had before and after was not shown.

When the Easterlings left Stapleton about thirty or forty-five minutes before the train struck him, Easterling stated: "He looked to me like he was sober." Two chiefs of police of Pass Christian whose combined tenures extended over a quarter of a century stated that Stapleton habitually got drunk when he came in from trips of several days duration he was accustomed to make as a shrimp and oyster fisherman. His divorced wife confirmed this proof, and it was shown that on several occasions, he had been arrested for drunkenness at the instance of members of his family. At the time of his death he was living with his father and mother who resided on Woodman

3. See annotation in 2 Recompiled Mississippi Code 1942 at pages 560–563.

4. Cf. Illinois Central R. Co. v. Gatis, 1947, 202 Miss. 624, 31 So.2d 902; Taylor v. Illinois Central R. R. Co., 1946, 200 Miss. 571, 27 So.2d 894; Columbus & G. R. Co. v. Cobbs, 1930, 156 Miss. 604, 126 So. 402; Bedford v. Louisville, N. O. & T. R. Co., 1888, 65 Miss. 385, 4 So. 121; Meridian Light and Railway Co. v. Dennis, 1924, 136 Miss. 100, 100 So. 581; and Alabama & V. R. Co. v. McCoy, 1913, 105 Miss. 737, 63 So. 221; and see the appellee's cases discussed infra.

Avenue within a short distance of the railroad and of the point of the accident.

As the Easterlings left Stapleton he asked to be taken to Gulfport, which was several miles away, and not to the home of his father. Manifestly he decided later to proceed to their home, although they did not know he was in town.

We accept, for the purposes of this opinion, the theory advanced by appellants that Stapleton was proceeding to his father's house by the use of a path at or near which he was sitting when struck by the train. This path proceeded across the single railroad track of appellee, joining two dead ends of Woodman Avenue, which ran substantially north and south. The nature and use of this path is gathered from the testimony of witnesses, from a sketch produced by appellant's civil engineer and from photographs, some of which were taken the morning after the accident. It entered the right of way from the end of Woodman Avenue on the south and proceeded some fifteen feet to a 1″ x 8″ board laid by an official of Pass Christian across a 4 foot ditch running longitudinally along the railroad right of way. The path had been in use for twenty or more years. On the south side of the railroad appellee had, many years ago, affixed an old crosstie, and north of the railroad, two crossties for the evident purpose of assisting persons using the path in negotiating the grade to and from the railroad track. These had been placed there many years before the accident, and there was no proof as to who had maintained them in position.

The railroad track was substantially six feet higher than the terrain on each edge of the 100 foot right of way. The photographs show that the weeds and stubble were pushed back or worn down for a width of about two feet, but they reveal no path actually crossing the railroad track. This is so because the ties and rails rested on loose slag ballast about 1½ feet above the adjacent terrain exclusive of the height of the exposed rails. The extent of the use of the path was not clearly shown, the deceased's father giving the only definite testimony when he estimated that from thirty to forty people per day use the path. There was no evidence that the path was ever used after midnight, and only a scintilla of evidence that any use at all was made of it during the night hours when the entire area was plunged in darkness.[5]

The train which struck Stapleton, evidently somewhere about his head, was a limited train going from New Orleans eastward to Mobile and did not stop at Pass Christian. The clothes worn by deceased were of a neutral color and the only thing white about him besides his hands and face was a patch over his right eye which he had lost many years before. His head was in his hands supported by his knees, and visibility was minimized by the presence of weeds and grass about two feet high. The primary attention of the enginemen was directed to the public crossings, about five of which were located within a space of around two thousand feet. The testimony of appellant's witnesses that they did not hear the whistle sounded for any of these crossings does not tend to discount their admission that all of them heard the sharp blasts just preceding the accident[6] and the positive testimony of the engineer and fireman that an alarm signal

5. This fact is important in view of the holdings of the cases hereinafter discussed that the duty owed by the railroad operatives would vary from time to time according to the use habitually made of the path at the particular time of the accident. This is in line with the rule enforced in other states. A good opinion on the subject was written by the Supreme Court of Texas in Missouri, K. & T. Ry. Co. v. Malone, 1909, 102 Tex. 269, 115 S.W. 1158, 1159; and see also Devance v. Missouri, K. & T. Ry. Co., Tex.Civ.App.1914, 164 S.W. 13, and Caldwell v. Houston & T. C. Ry. Co., 1909, 54 Tex.Civ.App. 399, 117 S.W. 488, 490.

6. Deceased's father estimated that these blasts continued about a minute, during which time the train would have traversed about one mile.

was given as soon as the man was seen. The facts most strongly construed in favor of appellants, therefore, bring the case within the ambit of quite a few which will be discussed below.

Appellants stake their case on the prima facie statute supra, and nine cases decided by the Supreme Court of Mississippi listed chronologically in the margin.[7] There being no Mississippi case sufficiently similar to the present one to be controlling, appellants properly analyze these several cases in an effort to distill from them the rules of law which should control us in this case; and it is necessary for us to extend this analysis through the long line of cases relied upon by appellee.

Only one of the cases cited (Dillon) involved the use of a path crossing the railroad track, three of them related to persons walking or lying in or along the track, three involved accidents at private crossings and two at public crossings. In each instance the Mississippi Court was merely applying legal principles to the facts of the particular case and they furnish auhority only to the extent that the principles announced apply to the peculiar facts of the case before us.

The four cases (Carter, Stevens, Harrison, Young) where the Supreme Court held jury questions to exist, even though the persons injured or killed were where they had no right to be, may be laid aside without discussion because in each case such extreme circumstances were presented that the court felt constrained to depart from the general rule of no liability to trespassers except for willful, wanton or gross negligence. Certainly we have nothing resembling such a case here. In every instance the principle was acknowledged that the speed of the train could not be considered as a factor unless the evidence showed that it contributed to the injury, and that trespassers have no standing unless they are able to show the wanton negligence referred to. It should be noted, too, that the speed statute there emphasized has no application here, footnote 12 infra.

Dillon was killed using a path across the railroad track which was customarily used by 150 to 200 factory employees going to their work in the morning and from their work in the afternoon. The accident happened while this large number of people was engaged in crossing the track and at a time when their view of an oncoming train was obstructed by a coal chute and while a switching engine was being backed at a high rate of speed when the engineer could not see a person on the track. This quotation from the opinion [8] illustrates the factual difference between that case and this:

"While the railroad company was under no statutory duty to sound alarms for this crossing, at the same time it is our opinion that its common-law duty required the engineer to give signals of his approach to this much-used crossing; especially is this true when the engineer knew that he was approaching this crossing at a rapid rate of speed with a backing engine *at the hour when between 150 and 200 people crossed it*. In fact, their failure to give these signals, coupled with the fact that the engine was backing at a rapid rate of speed and that the engineer could not see anything in front of his engine within two or three car lengths, in our opinion, makes out a case of negligence under the common law, which should

7. Alabama & V. Ry. Co. v. Carter, 1900, 77 Miss. 511, 27 So. 993; Stevens v. Yazoo & M. V. R. Co., 1902, 81 Miss. 195, 32 So. 311; New Orleans, M. & C. R. Co. v. Harrison, 1913, 105 Miss. 18, 61 So. 655; Illinois Central R. v. Dillon, 1916, 111 Miss. 520, 71 So. 809; Yazoo & M. V. R. Co. v. Williams, 1917, 114 Miss. 236, 74 So. 835; Columbus & G. Ry. Co. v. Duease, 1926, 142 Miss. 713, 108 So. 151; Young v. Columbus & G. R. Co., 1933, 165 Miss. 287, 147 So. 342; Johnson v. Columbus & G. R. Co., 1942, 192 Miss. 627, 7 So.2d 517; Fayard v. Louisville & N. R. Co., 1950, Miss., 48 So.2d 133; and Donald v. Gulf, M. & O. R. Co., 1954, 220 Miss. 714. 71 So.2d 776.

8. 111 Miss. 520, 71 So. 811.

have been submitted to the jury."
[Emphasis added.]

The italicized words in the quotation emphasize the generally accepted rule [9] that the duty owed by the railroad company varies from hour to hour according to the character and extent of the use of the crossing at the crucial moment. It is not necessary to discuss Dillon further at this point as we will point out, in presenting subsequent Mississippi cases, the differentiation the Mississippi Court has made in restricting Dillon to the peculiar facts there involved.

The private crossing cases are entitled to brief analysis. Williams was injured when, having attempted to cross the track at the usual place and found it blocked by the railroad, he followed a plantation road parallel with the railroad to a private crossing,[10] which was customarily used by the public. The engineer observed the car and "could see that it would very likely cross the railroad track at the crossing; he knew the driver did not know of his approach, or of the danger and perilous position he was fast placing himself in—the engineer knew all of this and could see and appreciate the whole situation at a point more than 500 feet before he reached the crossing. He knew this road so frequently traveled would lead the traveler across the track at the north crossing. He knew that the south public crossing was blocked as usual. * * * With this situation within his knowledge and plain view, and with plenty of time in which to act, he increased the speed of his train as rapidly as possible, and proceeded ahead toward the crossing without ringing the bell or sounding the whistle, one blast of which would probably have prevented the injury, and made no effort to protect the automobile from collision when he knew the driver of it was unaware of his danger * * * " This quotation from the opinion (114 Miss. 236, 74 So. 838) provides ample differentiation.

In Duease the Mississippi Court, holding that, at private crossings which people habitually travel, "The duty of a railroad company to give signals would depend upon circumstances *existing at a particular time,*" [142 Miss. 713, 108 So. 155] [emphasis added] and reversing a judgment against the railroad company because the trial court had instructed the jury that the railroad owed the same duty with respect to signals that it owed at a public crossing, nevertheless held that a case was made for jury decision. The crossing involved, however, though private, was situated alongside the station at a flag stop on the railroad and was used by people removing freight from the depot and by the public generally, and was restricted as to view of an oncoming train by buildings, crossties and other obstructions. There was testimony that no signals were given as the train approached this *quasi* public crossing, which was the only crossing serving the station and was much used; and see the differentiation of this case made by the Mississippi Court in Keller infra.

Johnson involved a collision between a train and a farm tractor pulling a combine across a plantation crossing, which came into the view of the enginemen when the train was 317 feet away. The engineer endeavored to stop, but did not sound any alarm with whistle or bell, and the Supreme Court of Mississippi reversed because of failure to submit to the jury the issue whether under the circumstances it was negligence for the trainmen to fail to give an alarm which might easily have prevented the accident.

Fayard, the first public crossing case cited by appellants and discussed at great length in their briefs and in the oral argument is, in our opinion a strong authority for appellee. The portion of the opinion upon which appellants place their main reliance (Miss., 48 So.2d 136) deals, as they claim, with the duty of the railroad under the Prima Facie Stat-

---

9. E.g., Duease and Mansfield, infra.

10. Which, under proper circumstances, a railroad is compelled to construct and

maintain, 6 Recompiled Mississippi Code of 1942, § 7781.

ute to produce evidence to show why Fayard was lying on the track at a public crossing in the town of Waveland, Mississippi.[11] It is clear that the court was accepting the fact of deceased's being upon a public crossing as negativing the idea of his being a trespasser. This is certainly consonant with Mississippi and municipal laws requiring crossings to be protected by lights, by signals, by lookout, by observance of speed restrictions and similar precautions. Moreover, the court accepted the prone position of Fayard as sufficient excuse for the failure of the enginemen to see him until less than 100 feet away, notwithstanding there was a complete absence of proof by the railroad under the Prima Facie Statute of the cause of his being in such position. The court did not rest its decision upon the language quoted in the note, and the dictum of the court recited no authority and it has never been cited since by the Supreme Court.

The facts of Fayard bear a marked similarity to those of the case before us, except that he was killed on a public crossing where he had a perfect right to be and with respect to which exacting statutory duties were required of the trainmen. The evidence showed that the train was equipped with a headlight which would illuminate an object the size of a man *standing erect* at a distance of 800 feet. Nevertheless the engineer testified that he did not see the man lying prone on the crossing until he was 60 feet away, and did not realize that it was a man until he was 30 feet from him, when he applied his brake in emergency, stopping the train in about 800 feet. The trainmen testified that the statutory signals with bell and whistle

were given. In affirming the action of the lower court in granting a peremptory instruction for the railroad company, the Supreme Court of Mississippi used in part this language (48 So.2d at page 136):

"Of course, the rule is so well established in this state that citation is not required for the proposition that the prima facie negligence of a railroad, as covered by Section 1741 of the Mississippi Code of 1942, is no longer available after all of the facts have been proved. In all justice, we fail to see how the railroad could have made a more positive showing as to the facts surrounding this unfortunate occurrence. [Despite the fact that no showing at all was made why the man was lying instead of standing.] The undisputed testimony of the engineer very clearly covers all points, and he is corroborated by the fireman who was in the cab of the locomotive with him. The prima facie case thus disappeared, and we are now remanded to consideration of the only remaining issue in the case.

"Appellants maintain that they should have been allowed to go to the jury on the question of whether or not the engineer was negligent in failing to see Fayard lying on the railroad crossing at a distance sufficiently far away to have enabled him to bring the train to a stop before striking him. They have offered no proof whatever, either in chief or in rebuttal, either directly or by reasonable inference, to demonstrate that under the conditions then prevailing the engineer could

11. "The Railroad argues here that Fayard was a trespasser and therefore the Railroad owed him no duty other than to refrain from wilfully and wantonly injuring him after discovering his presence on the tracks, this being the accepted rule in this state with reference to trespassers on railroad tracks. We have been cited no case on a situation similar to this, and we are unwilling to hold that under the particular facts of this case Fayard was a trespasser. A public

street crossing was a place where ordinarily he would have a right to be, and we have no proof in this record as to how he came to be lying on this crossing at this time. It could have been that he stumbled and fell on the crossing, injuring himself. He could have suffered some kind of stroke. As to any wilful intention to lie down on the crossing, the record is completely silent, and therefore we hold that he is not proven to have been a trespasser."

or should have seen the body huddled on the crossing any sooner than he did in fact see him. On the other hand, we have the positive testimony of the engineer, which we repeat is undisputed, that both he and the fireman were keeping a vigilant lookout. They had a headlight which would have enabled them to see a man standing erect at a distance of 800 feet down the track. * * * The uncontroverted proof is that deceased was lying in a crouched position on the crossing at night, and we have no proof that any engineer could have seen him under those circumstances at an earlier point than he did in fact see him. To the contrary, the proof is that the engineer was looking, and did not see him any sooner."

We have quoted at length from this opinion because it deals with a case where the identical contentions were made as are made here, and which rules most of these contentions against appellants. Finally, Donald involved a fatal accident at a public crossing which the Supreme Court characterized as "very dangerous" where the testimony warranted the jury in finding that the peculiar situation at the crossing required unusual precautions on the part of the railroad with respect to speed, signals, etc. The case has no application here.

A brief review of appellee's authorities will suffice to demonstrate further the correctness of the holding of the court below. The original and the most cited path case by the Supreme Court of Mississippi is that of Illinois Central R. Co. v. Arnola, 1901, 78 Miss. 787, 29 So. 768. It will be noted that Dillon and most of the other decisions cited by appellants first differentiate their facts from those in Arnola. There, Mrs. Arnola was injured while crossing a lot belonging to the railroad and by the negligent act of a servant of the railroad. The Supreme Court reversed a judgment rendered in her favor, rendering one for the railroad company:

"The path across the lot of appellant was used indiscriminately by all the citizens of Crystal Springs, but without any inducement held out by the railroad company for them to do so. The appellee was not on business with the company, but was upon its lot of land in pursuit of her own pleasure and errand. *She was a mere licensee, and the appellant owed her no duty except that of not inflicting upon her a willful or wanton wrong.* * * * " [Emphasis added.]

Alabama & V. R. Co. v. McCoy, 1913, 105 Miss. 737, 63 So. 221, involved the death of an employee of a lumber mill at a small town near Lake, Mississippi. The railroad permitted the mill company to construct a walkway between its mill on one side of the track and its store on the other. Deceased was using that walkway when he stepped in front of an oncoming train. There was proof that no signals were given. Apparently on the basis that this walkway was permitted as a benefit solely to the mill and its employees, the Supreme Court reversed a judgment rendered against the railroad company and ordered judgment in its favor.

Invoking the rule of Arnola, the Mississippi Supreme Court in Yazoo & M. V. R. Co. v. Cox, 1923, 132 Miss. 564, 97 So. 7, 8, an opinion written by Judge Sykes, the author of the Dillon opinion, denied recovery to Cox, who was sitting on the depot platform at Cruger, Mississippi, in a suit based upon failure to sound signals, excessive speed, etc. Cox claimed that these duties were owed to him because "the depot platform is habitually used by the citizens of this town as a passageway and a loafing place, which fact was known to the railroad company, * * * " A judgment in his favor was reversed and one in favor of the railroad rendered by the Supreme Court, which used in part this language: "The mere fact that the depot and platform were used as a loafing place by the citizens of this little town would not

make the railroad company liable to them for mere negligence. *They were either trespassers or bare licensees, and the rule in both instances is the same*, viz. that the railroad company is only liable for injuries to bare licensees when guilty of gross, willful, or wanton negligence. This has been the settled rule of this court for many years. * * *" [Emphasis added.]

Arnola furnished the grounds for another judgment by the Supreme Court in favor of the railroad company in Robertson v. Yazoo & M. V. R. Co., 1928, 152 Miss. 333, 118 So. 181, 183. In the town of Utica, Mississippi, the railroad provided a graveled space from 9 to 12 feet wide alongside the house track, where parties dealing with the railroad were accustomed to load and unload freight. The evidence showed that "the public, without any protest from the railroad company, indiscriminately drove upon this" area, and the Robertson car was using it when it came into collision with an upright guard-rail placed alongside the graveled space to protect a switch stand. The court denied recovery on the ground that it was clear that the primary purpose of the graveled space was to serve railroad purposes, and that the fact that the public was "invited" to use the area by being permitted such use constantly did not furnish a basis for liability. The Supreme Court said:

"An examination of the cases cited discloses that invitation is inferred *where there is some common interest or mutual advantage, while license is inferred where the object is mere pleasure or benefit to the person using it.*

"We think * * * that the occupants of the Ford coupe here were mere licensees; that they were not willfully or wantonly injured on this occasion by any act or failure to act on the part of the railroad company; and that it was not liable." [Emphasis added.]

The Mississippi Court found Arnola dispositive of a suit brought by a lady who went onto railroad property to transact personal business in Yazoo & M. V. R. Co. v. Mansfield, 1931, 160 Miss. 672, 134 So. 577; and, in a private crossing case, New Orleans & N. E. R. Co. v. Keller, 1931, 162 Miss. 392, 138 So. 358, 360, Dillon and other cases relied upon by appellants were discussed and distinguished and judgment for Keller reversed and judgment rendered for the railroad. This case deserves careful reading because it was a far stronger case against the railroad than the one before us. The crossing where the accident happened was maintained by the railroad company as a private crossing for vehicular traffic; in years past it had been much used, but in the last few years the travel over the crossing had been "desultory". The crossing led to a gravel pit, and adjacent to the railroad right of way was a state highway and an industry which employed a number of men. The engineer there testified, as did Engineer Huckaby here, that in his years operating over the crossing, he had never seen any person crossing there.

The decedent was accustomed to use the crossing to go to his own gravel pit nearby and he was using it on the day the train struck his car and killed him. The trainmen testified that the regular crossing signals were given, but this was disputed. The man entered the track from the fireman's side, who immediately notified the engineer, who began blowing danger signals and to apply his brake in emergency. The trial court submitted the case to the jury to determine whether there was a common law duty to warn the deceased of the approach of the train, and the jury rendered a substantial verdict upon which judgment was entered against the engineer and the railroad company. This language of the Supreme Court covers many aspects of the case under consideration:

" ' * * * in the case of a private crossing which people habitually travel, the duty of a railroad company to give signals would depend

upon the circumstances *existing at a particular time.'*

"This record does not disclose any peculiar or extraordinary circumstances surrounding this crossing and known to the trainmen that would differentiate it from any other private crossing, whether farm crossing or neighborhood road, in the state. The travel over the road was sporadic; there was no stream of travel at any given time known to the railroad or anybody else; there was no necessity for anybody to be along the track; and there was no cut or fill by which one seeking to cross at this point would be trapped and unable to see an oncoming train, such as were the circumstances in the Mann Case, supra [Illinois Central R. Co. v. Mann, 141 Miss. 778, 106 So. 7] and likewise in the case of C. & G. Ry. Co. v. Duease, * * * and I. C. R. R. Co. v. Dillon et al. * * *.

"In the Mann Case, supra, there was a cut or fill, on account of which one going on the track could not see the train until he was upon the track. In the Dillon Case, it was shown that the crossing was used by one hundred and fifty or two hundred employees *at that time and place,* and this was known to the trainmen, and that there was a coal chute and houses obstructing the view of pedestrians crossing at this place. And in the Duease Case, it was shown that there were obstructions on the right of way.

" * * * If we should affirm this case, it would be tantamount to holding that a railroad company must give warning by signal of its approach at every private, as well as public, crossing.

\*    \*    \*    \*    \*    \*

"As was said in the case of Alabama & V. R. R. Co. v. McCoy, * * * it was not within the power of the servants of the railroad in charge of the train to have prevented the accident after he got on the track; and in the case at bar we will say it was not within their power to stop the train or do anything else that would have prevented this accident after it became evident to them that McInnis was going upon the track. It certainly cannot be insisted that the railroad must give a separate warning signal to every person whom it sees upon its railroad right of way, and warning in such a case as this is not necessary until it becomes evident that a party approaching the track will ignore and disregard entirely his own safety.

"The peremptory instruction should have been given in this case for the defendant."

The Mississippi Court discussed fully the status of licensee and trespasser in the late case of Kelley v. Sportsmen's Speedway, 1955, 224 Miss. 632, 80 So.2d 785. Young Kelley, a school boy, was killed by a wheel which flew from a racing automobile, striking him while he was standing in what was known as the pit area. Speedway defended on the ground that Kelley, although a daytime employee in the pit area was, at the time of his death, merely a bystander in this area, which was forbidden to the general public but was not fenced off, and that he was nothing more than a licensee or trespasser to whom the duty was owed only of abstention from willful, wanton or gross negligence. This theory was submitted to the jury, which found a verdict in favor of Speedway. The Supreme Court affirmed the judgment and the giving of the instruction warranting the jury in classifying the deceased as a licensee or trespasser. Both terms are defined in the opinion, a licensee being "broadly defined as a person who enters upon the property of another for his own convenience, pleasure or benefit."

From these authorities it is clear that Stapleton was upon the railroad track—even assuming that he was using the path to cross over from one side of its right of way to the other—with the mere sufferance of the railroad

748

company and under circumstances from which the railroad could derive no possible benefit. It provided an amplitude of crossings well lighted and protected and with respect to which its duty to provide proper lookout, to give signals, etc., was primarily owed. Counsel stated frankly in the oral argument that it was not contended that the railroad company was guilty of wilful, wanton or gross negligence, and there can be no liability for Stapleton's death, it being clear and without dispute that the trainmen did everything within their power to save him after he was discovered in a position of peril.[12]

In their reply brief appellants develop at some length the thesis that every case where negligence is charged must be submitted to a jury and that this is certainly true if there is a scintilla of evidence to support it. They base this argument upon Lavender, Administrator v. Kurn, 1946, 327 U.S. 645, 66 S.Ct. 740, 744, 90 L.Ed. 916. That decision is restricted to cases arising under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and it concedes that a jury verdict should be set aside " * * * when there is a complete absence of probative facts to support the conclusion reached * * *".

The case before us is one arising under the substantive law of the State of Mississippi in a case tried in a federal court sitting in that state. Appellants challenge particularly the authority of the Mississippi Supreme Court decision in New Orleans & N. R. Co. v. Burge, 1941, 191 Miss. 303, 2 So.2d 825, 826, where a judgment upon jury verdict was reversed on the ground that, in a public crossing accident, the proof failed to show that the negligence of the railroad in exceeding the speed limit and in failing to blow the whistle proximately contributed to the injury; and that the proof was not of sufficient quantity and quality to support a verdict against the railroad.[13]

In Mississippi, negligence, in its traditional sense, has always been the sole basis for recovery and proof of negligence has always been required to be based upon substantial credible evidence. In Mobile & O. R. Co. v. Bryant, 1931, 159 Miss. 528, 132 So. 539, 546, the court reversed and dismissed a judgment based upon jury verdict where a lady had been killed at a public crossing where only three seconds elapsed between the time the engineer could see her in a position of peril and the time of the collision of the train with her automobile, the court accepting photographs depicting the situation in preference to the evidence of witnesses consisting of estimates of distance, etc.[14]

In Yazoo & M. V. R. Co. v. Lamensdorf, 1937, 180 Miss. 426, 177 So. 50, suggestion of error overruled 180 Miss. 426, 178 So. 80, the Mississippi Court

12. The bell and whistle statute, 6 Recompiled Mississippi Code of 1942, § 7777, has no application because the accident did not occur at a public crossing; and the speed statute, Ib. § 7782, is inapplicable because the locomotives were not run by steam. Calvert v. Mobile & O. R. Co., 1929, 153 Miss. 866, 121 So. 855.

13. "The problem becomes, then, one of the quantum of proof and the burden of proceeding therewith. And as in all other cases, possibilities and conjectures are excluded from the equation. * * * it is not within the legitimate province or power of a jury to convert a possibility into something more by the mere force of a verdict."

14. The court there quoted from the case of Mobile & O. R. Co. v. Johnson, 1930, 157 Miss. 266, 126 So. 827, 830, where in a crossing case it was stated: "It is enough to say, without more, that, if this character of lookout were required, there would be, in order to avoid possible liability, an intolerable recurrence of the throwing on of emergency brakes and an inadmissible interference with the efficient movement of the commerce of the country."

It also quoted from the case of Hancock v. Illinois C. R. Co., 1930, 158 Miss. 668, 131 So. 83, 84, this language: "The very purpose of locomotion by steam upon railways is the accomplishment of a high rate of speed in the movement of passengers and freight, and this the law authorizes."

discussed the character of proof necessary to establish liability, using this language: " * * * and we suppose it is not now necessary to more than briefly refer to what we have so often heretofore said, to wit, that to present a possibility, rather than a believable probability, is not a sufficient basis for a verdict and judgment [citing several cases]. The scintilla of evidence rule has been discarded in nearly all jurisdictions, and is not recognized in this state; but verdicts must be based upon substantial evidence and that evidence must be reasonably believable * * * "

The same idea was repeated in Mississippi Butane Gas Systems, Inc. v. Welch, 1950, 208 Miss. 637, 45 So.2d 262, 264–265. In commenting upon § 1455 of the Mississippi Code of 1942 providing that: "All questions of negligence and contributory negligence shall be for the jury," the court said:

"However, that statute does not change the fundamental condition that there must first be negligence, and without it, there is nothing for the jury. Here, as we have intimated, we find no justiciable negligence in the record. * * *

* * * * * *

" * * * [In] McCain v. Wade, 181 Miss. 664, 180 So. 748, * * * we declared that a plaintiff must show with reasonable certainty or definiteness that the party charged is the party actually responsible for the wrong, and that it is not enough that this should be left to conjecture or to inferences so loose as that it cannot dependably be told where the conjecture ceases and cogent inference begins * * *. 'As this court has frequently said, verdicts and judgments in civil actions must be based on the probabilities of the case, not on possibilities; and a verdict, although it is treated with great respect, has no force to convert a possibility into a probability.' "

And the same general principles have been steadfastly adhered to by this Court: Reuter v. Eastern Air Lines, 5 Cir., 1955, 226 F.2d 443; Smith v. General Motors Corp., 5 Cir., 1955, 227 F.2d 210; Illinois Central R. Co. v. Underwood, 5 Cir., 1956, 235 F.2d 868; McNamara v. American Motors Corp., 5 Cir., 1957, 247 F.2d 445; and Theriot v. Mercer, 5 Cir., 1959, 262 F.2d 754; and cf. Atlantic Coast Line Railroad Co. v. Futch, 5 Cir., 263 F.2d 701. Petition for rehearing denied March 5, 1959.

Affirmed.

HUTCHESON, Chief Judge (concurring).

I concur fully in the result, in all that is said in the careful and thorough analysis and discussion of Mississippi cases and law, by which in this case we are bound, and in the conclusion that under that law no actionable negligence was here shown, no case for a jury verdict was made out. I desire to add only that, in my opinion, the facts here shown are such that plaintiffs would stand no better in any other state where negligence is the basis of liability, and that plaintiffs' reliance on the decision of the South Carolina Court in Jones v. Atlanta-Charlotte Airline Ry., 218 S.C. 537, 63 S.E.2d 476, 2 A.L.R.2d 297 will not at all do, not only, or even mainly, because the suit is governed by the substantive law of Mississippi, but because the facts of the Jones case differ materially from those established here and nothing decided in it supports the view contended for here, that a case of actionable negligence even under South Carolina law was made out.