MISSISSIPPI BUTANE GAS SYSTEMS, INC. *v.* WELCH.

In Banc. March 13, 1950.

No. 37397 (45 So. (2d) 262)

W. E. Gore, for appellant.

640

George B. Grubbs, for appellee.

**Smith, J.**

At the beginning of the events, and all during the period involving the facts and circumstances of this case, appellant was a dealer in butane gas tanks, among other articles of merchandise, and appellee was a farmer living on his farm in Simpson County.

This action was filed in the circuit court by appellee seeking damages of $10,188.43 from appellant as a consequence of an alleged sale to him of a defective butane gas tank, and negligently refusing to repair or replace it, after notice. It is to be steadfastly borne in mind that there is no testimony in the record that appellants contracted with appellee to keep the tank in repair. The evidence, therefore, as to alleged subsequent leaks developing is pertinent only to the issue whether the tank, when its sale was completed, was defective, and negligently sold in that condition. The declaration is somewhat ambiguous in that it seems to embody both an action ex contractu on an implied breach of warranty of sale and

ex delicto for negligence. Faced with that situation, appellant filed a motion for the court to require appellee to elect which he would pursue. While the actual ruling of the court does not appear in the record *in haec verba,* it does sufficiently appear that the element of breach of warranty was eliminated by the court, and the case was tried as one of a negligent sale of a defective butane gas tank to appellee, which he charged appellant failed to repair, and, therefore, ruined his well of water for domestic use; and a new well subsequently dug for the same purpose; compelling him to haul water from a neighbor's place, as well as to take his cattle there likewise for watering; that his farm depreciated heavily in value; and he was forced to buy extraordinary amounts of butane gas—all because some months after the purchase and installation of the tank, it sprang a leak.

██ It was indispensable to appellee's theory on which the action was brought and tried that appellants knew, or, by the exercise of reasonable care, should have known, that the tank was defective at the date of its sale and delivery—if in fact it was defective at all—and negligently sold it to appellee, in such condition. Certainly, if it were not defective at all when sold and delivered, then, in that event, there was no justiciable right of action.

At the conclusion of all of the testimony, appellant requested that the jury be peremptorily instructed to find for it, and this motion was overruled, the jury subsequently bringing a verdict of $2,000 for appellee. Motion for new trial was overruled, and the case appealed here with numerous assignments of error. However, in view of the conclusion we have reached, it is useful to discuss only one aspect of the trial. Was the lower court in error, when appellant's motion, supra, was overruled? If so, no other point need be considered. However, it is not to be assumed that thereby we are overruling other assignments of error that may have merit. We pretermit them.

The important and pertinent facts in the case follow. On October 30, 1945, appellee was living in his farm home and purchased the tank from appellants, making a down payment. However, delivery was not made at once because appellants at the time had none in stock In December 1945, the tank was delivered and installed, and the trial court fixed that date as the inception of the claim of damages,—in other words, the completion of the sale by delivery.. Appellee had appellant to install it within twelve feet of a well from which water was drawn for his household needs.

Appellant obtained the tank from the Delta Tank Manufacturing Company of Baton Rouge, La., shown in the record without contradiction to be one of the best manufacturers of such tanks. Appellant had bought from them and resold to its customers theretofore, some eight or nine hundred of these tanks without incurring trouble or complaint. As required by law, the tank had been inspected by a representative of the Motor Vehicle Commission. In this regard, a former inspector for the Motor Vehicle Comptroller of Mississippi testified that he could not recall ever finding any leaks in tanks manufactured by the Delta Company. As a result of the inspection of this particular tank by the State inspector, it was tagged by the State. This tag certified that it was approved for sale and installation in Mississippi, in other words, free from defects. In addition, at or about the same time, an inspector for an insurance company which issued policies of insurance on such tanks, inspected it from that angle, and pronounced it acceptable for insurance.

Nevertheless, appellee contended, and testified, that the tank was defective because some months after installation the water in his well began to taste bad and smell like gas. This he reported to appellant, and a State inspector and one of appellant's employees made an inspection of the tank and applied a mercury test. However, no leak was discovered. In the meantime, appellee

continued to use the tank and the water from the well. A considerable time later, some of the water was sent to State College and another specimen was also thereafter sent there for chemical analysis. The chemist refused to swear there was butane contamination, although he said there might have been some in the first specimen submitted. Appellee bored a new well in thirty feet of the tank, and overnight, appellee offered testimony to show, it too became contaminated, which, he said, compelled him to haul water from a neighbor, but he kept on using the tank. On June 20, 1947, after another complaint to appellant, its employee made another inspection of the tank, and found no leak, although he made a minor repair to a valve, in no sense a defect in the tank. It is to be noted that this was approximately a year and a half after the delivery and installation of the tank in December 1945. Appellee continued to use the tank, until September 13, 1948, nearly three years after delivery, when it was condemned by the State inspector for a small leak in the shell. As an indication of how diminutive the leak was, when condemned the tank contained about seventy-five gallons of butane on that date. At the trial of this case, March 22, 1949, approximately six months later, it still contained thirty-seven gallons.

After appellee's second complaint in 1947, appellant, according to its evidence, offered to repair the tank or give appellee another one, if it needed repairs or if it could not be repaired, respectively, in order to satisfy him, but without legal obligation to do so, as indicated in the record. This offer appellee rejected. This, however, is not of substantial importance on the real issue in the case, and that is, was appellant liable in damages to appellee for having sold him a defective butane tank? The only effect on the issue, as we see it, of the subsequently developed leaks, taking appellee's evidence as true, is that if the tank were defective, it was a latent defect, not discoverable to appellant by a reasonable inspection. Such inspection was, without contradiction, as

shown, supra, and the tank approved as without defect, and therefore saleable in Mississippi, and acceptable for insurance.

Appellee seeks to uphold the verdict and judgment of the trial court by citing Vold on Sales, pages 458, 459, 460 and 461, dealing with liability both for breach of warranty of suitability and negligence in sales. We do not think the texts cited support appellee's contentions under the facts of the present case. As shown, supra, the court ruled out the warranty feature, but even if he had not, we find no breach of such a warranty, in the sense that it was not reasonably suitable for its prospective use at the time of the completed sale, if it had been in issue; nor do we find any negligence in the record. Emphasis is placed by appellee upon the rule that violation of a statute or ordinance designed to protect buyers of the article will generally be considered negligence as a matter of law. The reason for his emphasis on this point, he indicates, is that Chapter 317, Laws 1948, is violated. This act repealed Chapter 265, Laws 1946, which in turn, repealed Chapter 170, Laws 1940, and other laws. We do not think any violation of the pertinent laws cited has been shown, and the only one of them in effect at the time of the sale and installation, (in other words, delivery) of the tank was Chapter 170, Laws 1940.

 Appellee further calls our attention to Section 1455, Code 1942, providing that "All questions of negligence and contributory negligence shall be for the jury." However, that statute does not change the fundamental condition that there must first be negligence, and without it, there is nothing for the jury. Here, as we have intimated, we find no justiciable negligence in the record, even within the framework of appellee's quoted definition of the term, from Black's Law Dictionary, 3rd Edition, page 1229, or otherwise. On this point, appellee also cites Becker Asphaltum Roofing Company v. Murphy, 224 Ala. 655, 141 So. 630, an Alabama case, which we do not deem in point. Neither is Mississippi Power & Light

Company v. McCormick, 175 Miss. 337, 166 So. 534, 535. In the latter case, the situation was recognized by the Power Company and undertaken to be corrected, as an obligation. The employee finished and left, assuring the householder the trouble had been corrected and repaired. Toward the end of the week, there was an explosion, due to a loose joint about three inches from the heater value. The situations and circumstances and relations of the parties in the two cases are different, which is partially illustrated by this quotation from the Power Company opinion: "When a *gas company* has notice that gas is escaping in the premises of a patron, the company must either shut off the gas or remedy the defect, and one or the other must be done as quickly as practicably possible." (Italics supplied.) The appellant there was furnishing gas; here, it merely sold a storage tank, installing it outside the house of appellee, and appellee might, and did, obtain gas from whomsoever he pleased.

Appellant argues that even if there were negligence, as complained, which it denies, it is not liable because the alleged damages sought by appellant were not foreseen or foreseeable when the sale was made; that it was not the proximate cause of such damage; and that appellee could and should have minimized such damages, to a very small amount, but did not do so, preferring to continue to use the tank and let the alleged damages accumulate. However, we do not now pass on those points, even though their merit be apparent, for the reason that it is not necessary because of our conclusion that appellant should have been granted the peremptory instruction requested at the end of all of the testimony.

Appellant cites Illinois Central Railroad Company v. Cathey, 70 Miss. 332, 12 So. 253, holding that recovery for negligence must have a better foundation than mere possibility; and others to the same effect: McCain v. Wade, 181 Miss. 664, 180 So. 748, in which we declared that a plaintiff must show with reasonable certainty or definiteness that the party charged is the party

actually responsible for the wrong, and that it is not enough that this should be left to conjecture or to inferences so loose as that it cannot dependably be told where conjecture ceases and cogent inference begins; and Yazoo & M. V. R. Company v. Skaggs, 181 Miss. 150, 179 So. 274, 278, from which we quote: ''As this court has frequently said, verdicts and judgments in civil actions must be based on the probabilities of the case, not on possibilities; and a verdict, although it is treated with great respect, has no force to convert a possibility into a probability.''

In the case at bar, there was an abundance of undisputed evidence that at the time and delivery of this tank, it was sound and free of defects, fit and suitable for use as a storage tank for butane gas. If it be conceded, for sake of the discussion that some considerable time later it developed a leak, it must, therefore, have resulted from a latent defect not discovered or discoverable by exercise of the reasonable and careful inspection at the time of sale and delivery, and unknown to appellant at that time. We think the case of Pillars v. R. J. Reynolds Tobacco Company (Corr Williams Tobacco Company, distributor), 117 Miss. 490, 78 So. 365, 366, is interesting in this connection. In that case, we reversed the judgment of the lower court for the defendants, as to the manufacturer (but affirmed it as to the distributor) saying: ''The distributor could not have suspected that human toes were concealed in the plug, and was not negligent in not discovering the noxious contents of the plug.'' By this citation, we are not to be taken as holding the manufacturer of the tank in the case at bar to be liable in damages to appellee—that matter is not before us, nor are we to be considered as intimating as much, directly or indirectly. The appellant in the instant case may be compared with the distributor in the cited case, although, in fact, it was a retail dealer.

In Prosser on Torts, Hornbook Series, we glean the following, Section 82, Page 669: ''The liability of the

seller to the buyer for negligence is now very largely superseded by strict liability for breach of warranty, by which the seller insures, to some extent at least, the quality and safe condition of the goods. Such a warranty is now regarded by most courts as a term of the contract of sale, express or implied, for which the remedy is a contract action.'' On Page 684 of the same work, Section 83, it is said: ''When the defendant is not the manufacturer but a mere dealer, who is not held to anything more than a cursory examination of the product which he has purchased for resale and investigation of any apparent defects, the presence of latent defects in the goods does not make out a case of negligence on his part, if they were not such as might be discovered by a reasonable inspection.''

Here, appellant had the benefit of reasonable inspections by an official of the State of Mississippi, designated by law to make it, and by an inspector of an insurance company interested in insuring such tanks, which he found would be justified in accepting for insurance.

In view of what we have said, we are constrained to reverse the judgment of the trial court, and render a judgment here for appellant, since its motion for a peremptory instruction at the completion of all of the testimony, should have been sustained.

Reversed and judgment here for appellant.