641 So.2d 20 (1994)
Tony THARP and United States Fidelity & Guaranty Company
v.
BUNGE CORPORATION.
No. 90-CA-01160.
Supreme Court of Mississippi.
July 21, 1994.
*21 H.L. Merideth, Jr., Roy D. Campbell, III, Campbell DeLong Hagwood & Wade, Greenville, for appellants.
Andrew N. Alexander, III, Lake Tindall & Thackston, Greenville, for appellee.
En Banc.

ON PETITION FOR REHEARING
McRAE, Justice, for the Court:
This case was originally affirmed September 2, 1993. After deliberation of the parties' arguments on petition for rehearing, the original opinions are withdrawn and these opinions are substituted therefor.

I.
This case involves two different complaints. In the original premises-liability complaint, the plaintiff-appellant, Tony Tharp, sued the defendant-appellee, Bunge Corporation, alleging that he had sustained personal injuries while on Bunge's premises. Bunge then counterclaimed on a separate issue, accusing Tharp of fraud and conversion. The trial judge ordered separate trials for the original complaint and Bunge's counterclaim. On Tharp's original premises-liability complaint, a jury rendered a verdict for Tharp in the amount of one hundred thirteen thousand eight hundred twenty-eight dollars ($113,828.00), but the trial court granted Bunge's Motion for Judgment Notwithstanding the Verdict (JNOV). On appeal, Tharp asserts this was error.
In Bunge's counterclaim charging Tharp with conversion of Bunge's soybeans through the use of a scheme involving fraudulent scale tickets, the trial judge allowed the issue of fraud to go to the jury, but refused to allow the jury to consider the conversion claim. Bunge asserts the trial court's denial of jury consideration of the conversion issue was error.
*22 Through our inherent powers we hereby abolish the so-called "open and obvious" defense to negligence actions. We hold that the trial court's granting of the JNOV was erroneous, and this error, which is based on the "open and obvious" defense, requires the original jury verdict to be reinstated. Lastly, we also find that the trial court erred in its refusal to allow the conversion jury instructions, and that this error requires reversal for a new trial on the issue of conversion.

II. ORIGINAL COMPLAINT OF THARP AGAINST BUNGE

A. Statement of the Facts
As early as 1972, Bunge owned and operated a grain storage facility in Greenville, Mississippi. Bunge received grain from farmers at this facility and then shipped it by truck and by barge on the Mississippi River. Extending from the grain storage facility was a long conveyor, surrounded by a catwalk, which extends from the building outward, over a levee, to Bunge's barge loading facility on Lake Ferguson, which eventually connected to the Mississippi River. A door, which provided access to the floor of the catwalk, was located along the conveyor just as it cleared the levee. The door had a metal plate mounted at the bottom of the opening between the west and east frame of the gate to the catwalk. The top edge of this plate was four inches above the floor of the catwalk. The door was kept locked by Bunge, with access restricted to only a few people, among whom were grain samplers who inspected the grain in the conveyor.
No steps or ladders were provided to assist the grain samplers in getting from the ground surface of the levee into or out of the door to the catwalk. The levee beneath the conveyor sloped sharply; the distance from the surface of the levee to the east frame of the door was 29 inches and the distance from the surface of the levee to the west frame of the door was 39 inches. Therefore, when one exited the door onto the sloping ground beneath, there was a step-off from 29 to 39 inches. At the time of the accident, Tharp was 5'8" tall and weighed 165 pounds. His stride was measured in the courtroom at approximately 30 inches.
Tony Tharp, while working for the Mississippi Department of Agriculture, used the door to enter the conveyor to sample grain that was being shipped out by Bunge, since it was necessary to have an independent entity sample or grade the grain to be shipped in order to certify the quality of the grain to a buyer. At some point prior to the accident in question, Bunge began placing a tarpaulin under the catwalk to catch soybeans that were scattered by a rapidly moving conveyor belt. The arrangement of the tarpaulin varied from day to day. This tarpaulin was ordinarily put in place each morning by Bunge employees and had to be emptied periodically during the day as grain collected in it. The height from which the tarpaulin was suspended on the day of the accident was a fact in dispute at trial.
On September 17, 1984, Tharp arrived at the conveyor site to relieve fellow inspector, Aubra Moody, who was taking his lunch break. Tharp climbed through the door, and Moody stepped down. After approximately one hour, Moody returned to the catwalk to relieve Tharp. As Tharp was exiting, he chose to jump from the doorway, instead of stepping down. When he did so, he apparently didn't lift his foot high enough to clear the tarpaulin and caught his foot in the tarpaulin, causing him to fall and suffer a knee injury.

B. History of the Proceedings
Tharp sued Bunge and one of its employees, Poole Chapman, in the Circuit Court of Washington County on June 11, 1985, alleging that Bunge was negligent in failing to provide a ladder or steps to get from the slope of the Mississippi River levee onto Bunge's catwalk and was negligent in putting a tarpaulin across the door. Bunge answered and filed a counterclaim against Tharp alleging conversion and fraud which had arisen under an unrelated set of facts. After it had paid $39,758.20 in medical benefits, Tharp's workers' compensation carrier, United States Fidelity & Guaranty Company (hereinafter "U.S.F. & G.") intervened.
Tharp filed a motion to separate the original claim and the counterclaim, and on July *23 12, 1986, the trial judge ordered separate trials for each claim. Tharp's complaint went to trial on November 30, 1987, and following Tharp's proof at trial, the trial court directed a verdict in Bunge's favor. Tharp immediately filed a motion for reconsideration and on October 26, 1989, the trial court granted his motion. The case was retried on May 14, 1990, and proceeded to jury verdict in favor of Tharp in the amount of $113,828.00. Bunge then filed a Motion for JNOV or, in the alternative, a Motion for New Trial. On June 21, 1990, while the motion was pending, this Court decided McGovern v. Scarborough, 566 So.2d 1225 (Miss. 1990). Citing McGovern, the trial court, on September 6, 1990, granted Bunge's Motion for JNOV, stating that, in retrospect, its earlier ruling granting a directed verdict had been correct. This ruling was formalized by Order on September 24, 1990, and Tharp perfected this appeal.

C. Analysis

The Trial Court Erred in Sustaining Bunge's Motion for JNOV and Setting Aside the Jury Verdict in Favor of Tharp.

1. Standard of Review
A Motion for JNOV tests the legal sufficiency of the evidence supporting the verdict. Goodwin v. Derryberry Co., 553 So.2d 40, 42 (Miss. 1989); Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984). The motion asks the Court to hold, as a matter of law, that the verdict may not stand. The trial court must consider the evidence of the non-moving party in the light most favorable to the non-moving party and give that party the benefit of all favorable inferences that reasonably may be drawn. If the evidence is sufficient to support a verdict in favor of the non-moving party, the motion for JNOV must be denied. Goodwin, 553 So.2d at 42-43. When a JNOV has been entered by the trial court, this Court is required to review the evidence in the light most favorable to the appellant, disregarding any evidence of the appellee in conflict with the evidence favorable to the appellant. "If the evidence and the reasonable inferences drawn therefrom would support a verdict for the appellant, then the verdict must be reinstated." Waller v. Dixieland Food Stores, Inc., 492 So.2d 283, 286 (Miss. 1986). See also Hollie v. Sunflower Stores, Inc., 194 So.2d 217, 218 (Miss. 1967).

2. Applicable Law
Without negligence attributable to the defendant, there can be no recovery. In Mississippi Butane Gas Systems, Inc. v. Welch, 208 Miss. 637, 648, 45 So.2d 262, 264-265 (1950) we noted that there exists the fundamental condition "that there must first be negligence, and without it, there is nothing for the jury (to decide)." See New Orleans & Northeastern Railroad Co. v. Lee, 205 So.2d 923, 924 (Miss. 1968).
Mississippi led the nation at the turn of this century by being the first state to adopt a pure comparative negligence standard. Mississippi Code Ann. § 11-7-17 (1972) reads that "all questions of negligence and contributory negligence shall be for the jury to determine." Miss. Code Ann. § 11-7-17 (1972). For the open and obvious defense to be a complete bar to a negligence claim, the plaintiff must be one hundred percent (100%) negligent himself. Miss. Code Ann. § 11-7-15 (1972). Mississippi Code Ann. § 11-7-15 states the fact that "the person injured, or the owner of the property ... may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured, or the owner of the property... ." Miss. Code Ann. § 11-7-15 (1972).
Mississippi, however, until today, stills employs the complete defense of a danger being open and obvious. Previously, this Court has found that:
"(t)he owner or occupant then is not an insurer against all injuries. (citations omitted). In fact, there is no liability for injuries, where the condition is not dangerous, or where the condition is, or should be, known or obvious to the invitee. King v. Dudley, 286 So.2d 814, 816 (Miss. 1973); General Tire & Rubber Co. v. Darnell, 221 So.2d 104, 107 (Miss. 1969).
*24 Kroger, Inc. v. Ware, 512 So.2d 1281, 1282 (Miss. 1987).
Our law sets forth the premise that there may be more than one proximate cause to a negligent act. See King v. Dudley, 286 So.2d 814, 817 (Miss. 1973); Braswell v. Economy Supply Co., 281 So.2d 669, 676 (Miss. 1973). The defendant may be negligent, but so too may be the plaintiff. Thus, our comparative law applies. The "open and obvious" standard is simply a comparative negligence defense used to compare the negligence of the plaintiff to the negligence of the defendant. If the defendant was not negligent, it makes no difference if the dangerous condition was open and obvious to the plaintiff since the plaintiff must prove some negligence on part of the defendant before recovery may be had. On the other hand, if the defendant and the plaintiff were both at fault in causing or attributing to the harm, then damages can be determined through the comparative negligence of both. Theoretically, if a plaintiff is ninety-nine (99%) percent negligent and the defendant is only one (1%) percent negligent, the plaintiff is still entitled to recover the one percent (1%) attributable to the negligence of the defendant. Clearly, the jury decided that defendant Bunge was negligent, as well as finding that the condition was not one hundred percent (100%) objectively open and obvious, as it awarded Tharp money damages to compensate for Bunge's negligence.
Emerging from other jurisdictions is a modern trend toward holding that the obviousness of a danger does not necessarily relieve the owner's duty of care. Moreover, many states have limited the use of this doctrine by holding that a plaintiff's knowledge or the obviousness of a dangerous condition does not preclude recovery, and, in some instances, states have expressly abolished the open and obvious doctrine after the adoption of comparative negligence. Many other states have adopted or cited as a basis for their decision § 343A Restatement (Second) of Torts which states in part:
(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. (emphasis added).
See Regency Lake Apartments Association, Ltd. v. French, 590 So.2d 970, 973-74 (Fla. DCA 1991) (comparative negligence applied when plaintiff tripped over exposed tree roots within apartment complex while walking dog in designated area that she had used twice daily for three months); Laesch v. L & H Industries, Ltd., 161 Wis.2d 887, 469 N.W.2d 655, 659 (Wis.App. 1991) (open and obvious defense rejected based upon § 343A when rails piled along and parallel with abandoned railroad right-of-way caused injury); Ward v. K Mart Corp., 136 Ill.2d 132, 143 Ill.Dec. 288, 296, 554 N.E.2d 223, 231 (1990) (court abolished open and obvious doctrine stating that "the manifest trend of the courts in this country is away from the traditional rule of absolving, ipso facto, owners and the occupiers of land from liability for injuries resulting from known or obvious conditions ..."); Konicek v. Loomis Brothers, Inc., 457 N.W.2d 614, 618-19 (Iowa 1990) (comparative negligence used when injury occurred from open and obvious opening in roof); Harrison v. Taylor, 115 Idaho 588, 768 P.2d 1321, 1328 (1989) (open and obvious doctrine abolished when injury was sustained due to hole in sidewalk observed by plaintiff); Parker v. Highland Park, Inc., 565 S.W.2d 512, 517 (Texas 1978) (comparative negligence employed and open and obvious abolished when dark stairway at apartment complex caused injury); Evans v. Tanner, 286 Ala. 651, 244 So.2d 782, 786-87 (1971) (comparative negligence applied to open and obvious danger known to plaintiff); King Soopers, Inc. v. Mitchell, 140 Colo. 119, 342 P.2d 1006 (1959) (irrelevancy of obviousness of danger "where the condition is one which the invitee would not expect to find in the particular place, or his attention is distracted by something on the premises, or the condition is one ... which cannot be encountered with reasonable safety even though the invitee is aware of it").
The trial court erroneously relied on McGovern v. Scarborough, 566 So.2d 1225 (Miss. 1990) as applicable law regarding the use of "open and obvious" as a defense. This Court *25 gave a complete overview of the law concerning the duty owed by a landowner to a business invitee in McGovern:
Thus, we have repeatedly held the owner of premises:
(1) is not an insurer of the invitee's safety,
(2) has only a duty to keep the premises reasonably safe, and
(3) when not reasonably safe to warn only where there is a hidden danger or peril that is not in plain and open view.
Id. at 1228.
In McGovern, however, we actually found that there was no negligence attributable to the defendant in raising a doorway three-quarters of an inch (3/4"). This Court went into great detail to say that the defendant was not negligent and merely threw in the phrase "open and obvious" at the end. We stated:
According to (defendant), he raised the threshold three-quarters of an inch. A person entering the building from the sidewalk through this door was obliged to step up two to three inches in any event. By any stretch of the imagination can it be said that the entrance to this building was not reasonably safe? And, it is impossible to envision this doorway as creating a danger of some kind, in some way different from thousands of like doorways. Moreover, it was open and obvious.
Id. We simply found that there was no negligence on the part of the defendant, and McGovern was based on that fact alone. McGovern, therefore, is not controlling in this case, since the jury specifically found Bunge negligent.
This Court should discourage unreasonably dangerous conditions rather than fostering them in their obvious forms. It is anomalous to find that a defendant has a duty to provide reasonably safe premises and at the same time deny a plaintiff recovery from a breach of that same duty. The party in the best position to eliminate a dangerous condition should be burdened with that responsibility. If a dangerous condition is obvious to the plaintiff, then surely it is obvious to the defendant as well. The defendant, accordingly, should alleviate the danger.
We now abolish the so-called "open and obvious" defense and apply our true comparative negligence doctrine. The jury found that there was negligence in the case at hand; the trial judge erred in construing the open and obvious defense as a complete bar when it really is only a mitigation of damages on a comparative negligence basis under Miss. Code Ann. § 11-7-15. The general verdict the jury returned in favor of Tharp shall be reinstated.

III. BUNGE'S CROSS-APPEAL

A. Statement of the Facts
Bunge's counterclaim arose out of Tharp's alleged participation, along with John Stevens (a local farmer), Dewey Welch (Mississippi Department of Agriculture co-employee), and two Bunge employees, in a scheme to have false scale tickets issued from Bunge's Greenville, Mississippi, scale. The fraudulent scale tickets were presented to Bunge's business office, and a check was issued to Stevens for the quantity of soybeans represented by the ticket. Bunge paid approximately $77,500.00 on alleged false scale tickets.
Bunge's two liability witnesses at the trial of the counterclaim were Dewey Welch and John Stevens. Welch testified concerning how the scheme worked:
A. Well, when the truck comes to deliver its beans, it would come up on the scales. They would then weight the truck and as the truck driver would get off the truck, they would double weigh it again. The farmer then proceeds to dump the grain, coming out, they would do the method of the same thing. That way making an extra ticket per load.
Q. And, were these tickets later presented to Bunge for payment?
A. Correct.
Q. Was money obtained for these tickets?
A. Yes.
Q. Was any beans delivered for these tickets, these fake record tickets?
A. No.
*26 Welch testified that Tharp was a participant in the scheme and had received a portion of the money from the false tickets. Welch further testified that Tharp knew the purpose for the money and that Tharp had been given money from the scam on different occasions.
Another liability witness was John Stevens. Stevens testified that he learned Tharp was involved in the scheme when Tharp attended a meeting at a local restaurant between Stevens and Welch. Stevens had one other meeting with Tharp. According to Stevens' allegations, Stevens gave Tharp a portion of the proceeds of one of the scam checks, and he and Tharp discussed cutting Welch out of the scam.
Tharp denied that he had any part in the scam. However, Tharp testified that Stevens had informed him of his (Stevens') involvement in the scam. Tharp also presented the sworn statement of Michelle Laster, one of Bunge's employees involved in the scam. Laster did not mention Tharp when she described the participants of the scam.

B. History of the Proceeding
Bunge counterclaimed in Tharp's original personal injury suit, alleging that Tharp had participated in a conspiracy to convert Bunge's property and to defraud Bunge. Tharp filed a motion to dismiss the counterclaim, or, in the alternative, for separate trials on the two claims. The trial judge entered an order denying Tharp's motion to dismiss but ordered separate trials on the original complaint and counterclaim. The order provided, however, that only one judgment was to be entered at the conclusion of both trials, offsetting any verdicts received.
At the close of the counterclaim trial, Bunge submitted jury instructions on two theories of recovery, conversion and fraud. The trial court sent the fraud claim to the jury but refused to allow the jury to consider Bunge's conversion claim represented by jury instructions P-4 and P-5. The jury returned a verdict in favor of Tharp on the fraud claim. Bunge then filed a motion for JNOV or, in the alternative, for a new trial. This motion was denied and, pursuant to the previous trial judge's original order, a final judgment was entered on October 28, 1990 by the judge of the counterclaim trial.

C. Analysis

The trial judge erred in refusing to allow Bunge's claim for conversion against Tharp to go to the jury.
To instruct the jury on a certain point, there must be sufficient testimony in the record to support it. Johnson v. Foster, 202 So.2d 520, 526 (Miss. 1967). Thus, there must be a sufficient presentation in the record of the issue of conversion for the jury to be instructed on conversion.
"Conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner's right." Walker v. Brown, 501 So.2d 358, 361 (Miss. 1987). See also Masonite Corp. v. Williamson, 404 So.2d 565, 567-568 (Miss. 1981). The trial court improperly withheld Bunge's conversion theory from the jury as it denied the following jury instructions offered by Bunge:
JURY INSTRUCTION P-4
You are instructed that in order to establish that Tony Tharp conspired to convert property of Bunge Corporation, Bunge Corporation must prove by a preponderance of the evidence that Tony Tharp or others with whom he was acting in a conspiracy intentionally acquired possession and/or control over money belonging to Bunge Corporation so as to deprive Bunge Corporation, without its consent, of the money.
JURY INSTRUCTION P-5
You are instructed that if you find from a preponderance of the evidence that Tony Tharp acted in a conspiracy with other persons to convert property or money of Bunge Corporation, then you [sic] verdict must be for Bunge Corporation against Tony Tharp.
Bunge clearly offered evidence of Tharp's possible involvement in a conversion scam. Both of its witnesses testified that Tharp was involved in the conspiracy and that he received *27 a portion of the proceeds. Bunge rightfully argues that it provided proof that: (1) there was a conspiracy or scheme to wrongfully take Bunge's money; (2) Tharp was a part of the scheme, and in fact, received part of the money; and (3) as a result of the scheme, Bunge lost $77,499.20.
Tharp argues that even if the refusal of these instructions was technical error, Bunge nevertheless received a fair trial. Thus, according to Tharp, the refusal would be harmless error. He further maintains that errors in instructions will not be cause for reversal where the interest of the complaining party has not been prejudiced.
The refusal of the trial judge to submit the conversion issue to the jury was, however, extremely prejudicial, since the issue that was submitted (conspiracy to defraud) carries with it the `fraud' burden of proof  by clear and convincing evidence. Conversion, on the other hand, may be shown by a simple preponderance of the evidence. Although Tharp was found not guilty of fraud, this in no way means that a jury could not have found him guilty of conversion since conversion carries with it a less stringent burden of proof.
The trial judge "matter-of-factly" denied instructions P-4 and P-5 although Bunge presented several witnesses who named Tharp as a participant in the scheme. It is settled within our law that:
"(a) party ... is entitled to have jury instructions given regarding all material issues presented in the pleadings or evidence. Glorioso v. Young Men's Christian Association of Jackson, 556 So.2d 293, 295 (Miss. 1989); Barkley v. Miller Transporters, Inc., 450 So.2d 416 (Miss. 1984). Likewise, a party is entitled to have his theory of the case presented to the jury through instructions, provided there is evidence to support it. Alley v. Praschak Mach. Co., 366 So.2d 661 (Miss. 1979)."
PACCAR Financial Corp. v. Howard, 615 So.2d 583, 590 (Miss. 1993). Upon examining the record, we conclude that there existed at trial sufficient evidence to allow the jury to consider the issue of conversion, and Bunge was prejudiced when the trial court so refused.
Having carefully reviewed the record, we find that the lower court erred in granting Bunge's JNOV motion. Further, the circuit court erred in not granting jury instructions P-4 and P-5. This Court reinstates the general verdict of the jury in the amount of one hundred thirteen thousand eight hundred twenty-eight dollars ($113,828.00) in favor of Tharp, together with statutory interest. We reverse that portion of this case regarding the issue of conversion for trial consistent with this opinion. We also affirm the fraud verdict in favor of Tharp.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
DAN M. LEE, P.J., and SULLIVAN, PITTMAN and BANKS, JJ., concur.
PRATHER, P.J., concurs in part and dissents in part with separate written opinion joined by HAWKINS, C.J., and JAMES L. ROBERTS, Jr. and SMITH, JJ.
PRATHER, Presiding Justice, concurring in part and dissenting in part:

I.
Respectfully, I dissent from the majority opinion and submit that the established law of premises liability which this State has followed for decades should be adhered to and the trial judge's granting of judgment notwithstanding the verdict (JNOV) should be affirmed as to the negligence complaint of Tharp. The majority opinion on this petition for rehearing adopts the identical facts set forth in the original opinion, but abandons the view that an "open and obvious" condition in a premises liability negligence is a viable defense. I disagree with the majority in changing established law, and would propose that fairness dictates that any change in settled law should be made prospective in application. Gilmore Co. v. Garrett, 582 So.2d 387 (Miss. 1991) (Prather, J. dissenting opinion).
Additionally, I disagree with the holding of the majority that a jury could find that the door through which Tharp exited was unsafe for use by persons in the exercise of reasonable *28 care. In McGovern v. Scarborough, 566 So.2d 1225 (Miss. 1990), this Court gave a complete overview of the law concerning the duty owed by a landowner to a business invitee. This Court held:
Thus, we have repeatedly held the owner of premises:
(1) is not an insurer of the invitee's safety,
(2) has only a duty to keep the premises reasonably safe, and
(3) when not reasonably safe to warn only where there is a hidden danger or peril that is not in plain and open view.
Id. at 1228.
In other words, the duty of the proprietor is to "eradicate the known dangerous situation within a reasonable time or to exercise reasonable diligence in warning those who were likely to be injured because of the danger." Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 773 (Miss. 1992) (citing J.C. Penney Co. v. Sumrall, 318 So.2d 829, 832 (Miss. 1975)). See also Lyle v. Mladinich, 584 So.2d 397, 399 (Miss. 1991).
This Court in Caruso, and in Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293 (Miss. 1988), held that the owner:
`owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition, and if the owner is aware of a dangerous condition not readily apparent to the invitee, he is under a duty to warn the invitee of the condition.'
(Emphasis in original). Caruso, 598 So.2d at 773 (quoting Jerry Lee's Grocery, 528 So.2d at 295). See also Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss. 1992); Long Term Care, Inc. v. Jesco, Inc., 560 So.2d 717, 721 (Miss. 1990); Waller v. Dixieland Food Stores, Inc., 492 So.2d 283 at 285 (Miss. 1986); Wilson v. Allday, 487 So.2d 793, 795 (Miss. 1986). The landowner is not held liable for injuries resulting from an "open and obvious" danger. See also Kroger, Inc. v. Ware, 512 So.2d 1281, 1282 (Miss. 1987) ("there is no liability for injuries, where the condition is not dangerous, or where the condition is, or should be, known or obvious to the invitee").
The condition of the premises was well known by Tharp and was open and obvious. In this regard, Tharp testified as followed:
Q. Now, when you started to leave, you saw the doorway; right?
A. Yes.
Q. And you saw the tarpaulin?
A. Yes.
Q. Nothing hidden about it?
A. No.
Q. And I think you told me earlier that you didn't remember exactly how high it was, but however high it was, whether it was three feet over [the threshold] or three feet under = however high that was = you saw how high it was, didn't you?
A. Yes.
Q. Okay. And you knew that to get out of the door, you had to go over the tarpaulin; right?
A. Yes.
Q. And you knew how high you had to step to get over the tarpaulin?
A. That's correct.
Q. Now, at the time you were coming out of the door, there were two things that you could have done: One, you could have jumped?
A. That's true.
Q. And that's what you did?
A. Yes.
Q. Had you done that before [the accident] happened?
A. Several hundred times probably.
Q. Okay. But there was another alternative: You could do what Mr. Moody, and Mr. Bowden I think testified about earlier; you could stand in the doorway and hold on with your left hand and swing down, still holding on until your right foot was on the ground?
A. Yes, I could have, and probably would have if I had been thirty years older like them.
Q. Okay, that's my point.
A. Right.
Q. You didn't have to jump to get out of this thing. There was a way that you could do it and hold on and always be holding on to something?

*29 A. Uh  yes.
Tharp estimated that he had been to the Bunge facility before the accident. He ordinarily went to the facility around noon to relieve the grain sampler. While there, he sampled the grain.
From the proceeding testimony of the Plaintiff Tharp, it is apparent that no negligence is attributable to the defendant Bunge. No dangerous condition was described by the plaintiff, but on the contrary the plaintiff established his own negligence in jumping from the opening rather than holding to the door frame until he had lowered himself safely to the ground. This exit, which was permanent and in place, had been used over 200 times before by Tharp without incident. Tharp's injury belongs to that group of accidents which are properly imputed to the carelessness of the person injured. The facts of this case contain no condition in which we have found a jury question to exist. Taking Tharp's testimony, there were no facts favorable to him, with all reasonable inference therefrom, that a rational jury could find in his favor. Lucas v. Buddy Jones Lincoln Mercury, Inc., 518 So.2d 646, 648 (Miss. 1988); McGovern v. Scarborough, 566 So.2d 1225 (Miss. 1990); Kroger, Inc., v. Ware, 512 So.2d 1281 (Miss. 1987); First National Bank of Vicksburg v. Cutrer, 214 So.2d 465 (Miss. 1968); Daniels v. Morgan & Lindsey, Inc., 198 So.2d 579 (Miss. 1967).
I respectfully submit that the trial court committed no error in his ruling following the facts of this case and our legal precedents.

II.
I concur with the majority opinion with reference to the reversal and retrial of the conversion counterclaim of Bunge.
HAWKINS, C.J., and JAMES L. ROBERTS, Jr. and SMITH, JJ., join this opinion.