IN THE SUPREME COURT OF MISSISSIPPI
NO. 94-CA-01144-SCT

*GARY W. CHURCH*

*v.*

*WILLIAM R. MASSEY AND BREWER STATE*
*JUNIOR COLLEGE*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/05/94 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DON O. ROGERS |
| ATTORNEYS FOR APPELLEES: | J. R. SHANNON |
| | WILLIAM B. CARTER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 6/26/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/17/97 |

**BEFORE DAN LEE, C.J., BANKS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. On July 12, 1991, Gary Church filed a personal injury action against Brewer State Junior College and William R. Massey. The Lauderdale County Circuit Court dismissed Brewer State, an Alabama public educational institution, finding that Article 1, § 14 of the Constitution of the State of Alabama (1901) "prohibits the State of Alabama being made a defendant in a court of law or equity." Following a two day trial, the jury returned a verdict for the defendant. The plaintiff perfected appeal to this Court, assigning as error the following issues:

## LAW

*1. Whether the trial court erred in dismissing Defendant Brewer State Junior College by invoking the general rule of comity and applying Alabama Law of Sovereign Immunity.*

*2. Whether the trial court erred in refusing to instruct the jury on Defendant Massey's duty to keep a proper lookout.*

*3. Whether the trial court improperly instructed the jury on comparative negligence.*

*4. Whether the trial court erred in granting Massey's requested Instruction D-3.*

*5. Whether the trial court erred in refusing to excuse Juror Lula McDonald and substitute an alternate juror.*

## FACTS

¶2. On March 24, 1990, Gary Church was riding his motorcycle west in the far right hand lane of 8th Street in Meridian, Mississippi. William Massey, an employee of Brewer State Junior College, was driving east in the school's van. At the location of the accident, 8th Street is a five lane undivided highway with a center turning lane. Massey entered the center lane, stopped for traffic to pass, and turned across the westbound lanes. Church struck Massey's vehicle behind the back door of Massey's 15 passenger van.

¶3. The testimony of Massey and Church conflicted as to the speed of Church's motorcycle. Massey asserted that the motorcycle was going at least 45 miles per hour while Church claimed to be going only 30-35 miles per hour. The posted speed limit on 8th Street is 35 miles per hour. Sammie Jimerson, Church's mailman, testified that he was following Church at the time of the accident and that Church was only traveling 30-35 miles per hour.

¶4. Church presented the testimony of a chiropractor showing a sharp decrease in the amount of mobility and use of his back. Massey refuted this evidence by showing that Church continued to ride motorcycles for long distances after the accident and failed to mention back pain in two subsequent doctor visits.

¶5. In addition, at trial Church complained twice about a juror sleeping during the plaintiff's case in chief.

## LAW

*1. Whether the trial court erred in dismissing Defendant Brewer State Junior College by invoking the general rule of comity and applying Alabama Law of Sovereign Immunity.*

¶6. Applying Alabama law, the trial court dismissed Brewer State Junior College from all proceedings stating that "the claim made by plaintiff against this defendant is prohibited, and thus, the defendant, Brewer State Junior College is dismissed from this action." In granting Brewer's motion for dismissal, the trial court failed to enunciate specifically the reasons for dismissal other than recapitulating the status of Alabama sovereign immunity law. However, both the plaintiff and defendant argued the issue of comity before the trial court.

¶7. Mississippi, in *Windham v. Blakeney*, 354 So. 2d 786, 788 (Miss. 1978), adopted the following definition of comity:

> The principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect.

*Windham*, 354 So. 2d at 788 (quoting Black's Law Dictionary 267 (4th ed. 1968)). However, as applied, this Court has generally considered the doctrine of comity in the enforcement and modification of foreign judgments rather than the application of substantive law. *See Laskosky v. Laskosky*, 504 So. 2d 726, 729 (Miss. 1987)("the principle of comity is similar to full faith and credit except that it is not governed by Federal statutes and that its application rests in the discretion of the trial judge"). *See also*, *Kountouris v. Varvaris*, 476 So. 2d 599, 607 (Miss. 1985); *Cox v. Cox*, 234 Miss. 885, 108 So. 2d 422 (1959).

¶8. This case does not present a question dealing with the principle of comity. Instead we are faced with a classic choice of law problem. "Since *Craig v. Columbus Compress & Warehouse Co.,* 210 So. 2d 645, 649 (Miss. 1968) and *Mitchell v. Craft*, 211 So. 2d 509 (Miss. 1968), Mississippi has ascribed to the most significant relationship test embodied in the Restatement (Second) of Conflicts of Law." *McDaniel v. Ritter*, 556 So. 2d 303, 310 (Miss. 1989).[1]

*¶9. McDaniel* adopts the Restatement language in determining choice of law. It provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
> (d) the place where the relationship, if any, between the parties is centered.

*McDaniel*, 556 So. 2d at 310 (citing Restatement (Second) Conflicts of Laws § 145).

¶10. This court has stated that "the principles of Section 6 and 145 of the Restatement (Second) defy mechanical application - they are less "rules of law" than generally stated guideposts." *McDaniel*, 556 So. 2d at 310. Choice of law, rather than looking at minimum contacts, looks to "where the contacts are maximized." *Id. See also Savelle v. Savelle*, 650 So. 2d 476 (Miss. 1995).

¶11. In accordance with the guidance of *McDaniel*, we analyze the relevant significant contacts upon which we base our decision. In favor of applying Mississippi law we find that the injured plaintiff was a Mississippi resident, the accident occurred in Mississippi, and all witnesses were located in Mississippi. In favor of applying Alabama law we find only that the defendant was a resident of Alabama.

¶12. Clearly, the most significant contacts are located in Mississippi. Therefore, the trial court erred in failing to apply Mississippi law to the question of the sovereign immunity of Brewer State Junior College. A foreign governmental entity enjoys no greater status under our tort law than any other

similarly situated tort defendant. We find no compelling public policy considerations which would dictate that Brewer State Junior College should enjoy immunities above and beyond those provided to our citizens.

## 2. Whether the trial court erred in refusing to instruct the jury on Defendant Massey's duty to keep a proper lookout.

¶13. "With any granted jury instruction challenged on appeal, two questions are necessarily implicated: Does the instruction contain a correct statement of the law? and Is the instruction warranted by the evidence?" *Hill v. Dunaway*, 487 So. 2d 807, 809 (Miss. 1986).

¶14. This Court articulated the standard of review necessary when considering the grant or denial of jury instructions in *Hill v. Dunaway*, 487 So. 2d 807, 809 (Miss. 1986):

> By analogy to our familiar test as to when any fact question may be taken from the jury, our rule is this: The refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper, only if the trial court - and this Court on appeal - can say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inferences which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction.

Cf. *Lee v. State*, 469 So. 2d 1225, 1230-31 (Miss. 1985); *Fairchild v. State*, 459 So. 2d 793, 801 (Miss. 1984).

¶15. In *Turner v. Temple*, 602 So. 2d 817, 823 (Miss. 1992), this Court stated the following guidelines:

> To have an instruction granted, the proponent must show that (1) the instruction is supported by the evidence and that (2) the instruction is a correct statement of the law. *Copeland v. City of Jackson*, 548 So. 2d 970, 973 (Miss. 1989); *Hill v. Dunaway*, 487 So. 2d 807 (Miss. 1986); *Lewis Grocer Co. v. Williamson*, 436 So. 2d 1378 (Miss. 1983). However, if the other instructions granted adequately instruct the jury, a party may not complain of the refused instruction on appeal to this Court. *Purina Mills, Inc. v. Moak*, 575 So. 2d 993, 996 (Miss. 1990); *Payne v. Rain Forest Nurseries, Inc.*, 540 So. 2d 35, 40 (Miss. 1989).

*Turner*, 602 So. 2d at 823.

¶16. Church requested that the jury be instructed specifically on the "lookout" theory of negligence. Church's requested instruction was as follows:

> The driver of a motor vehicle is charged by law with the duty of seeing what the evidence shows he plainly could have seen. If you find from a preponderance of the evidence that the motorcycle driven by Gary W. Church would have been visible to a reasonably careful driver in the position of William R. Massey at or immediately prior to beginning his turn across the west bound lane of 8th Street, then you must assume that William R. Massey did see Gary Church's motorcycle and on that basis determine whether or not his conduct was negligent.

The trial court refused this instruction stating that the "lookout" theory of negligence was sufficiently contained in jury instruction P-3 which was as follows:

> Prior to making a left turn across 8th Street, it was the duty of William R. Massey to exercise ordinary care not to turn his vehicle into the path of any oncoming vehicles, and unless there was sufficient time for William R. Massey to safely complete his turn across the oncoming lanes of traffic, then William R. Massey must wait for a clear opportunity before turning. If you find from a preponderance of the evidence that William R. Massey turned his vehicle into the path of the motorcycle ridden by Gary W. Church when there was insufficient time for William R. Massey to safely complete his turn across the oncoming lanes, then William R. Massey was negligent.

Church asserts that P-3 addresses solely the failure to yield the right of way while P-5 identifies the distinct theory of failure to keep a reasonable lookout.

¶17. When the instructions are examined in the aggregate, the jury was not fairly instructed as to the plaintiff's proof-grounded theory of the case. Therefore, the trial court abused its discretion in failing to grant the separate instructions. Failure to yield the right of way and failure to keep a reasonable lookout are two distinct theories of liability. The proffered instructions were not adequate in instructing the jury.

### 3. Whether the trial court improperly instructed the jury on comparative negligence.

¶18. Church next asserts that the trial court erred in granting Massey's requested instruction D-8. D-8 states:

> You are instructed that if you believe from a preponderance of the evidence in this case the Mr. Massey was guilty of negligence which proximately contributed to the Plaintiff's damages, if any, and if you further believe from the evidence in this case that the Plaintiff was also guilty of negligence which proximately contributed to his own injuries and damages, if any, and if you find that he is entitled to recover damages from the Defendant Massey, it will be your sworn duty *to reduce the amount of those damages, if any, awarded to the Plaintiff in the same proportion that his negligence, if any, bears to the negligence, if any of the Defendant Massey*. (emphasis added).

¶19. This instruction is an improper statement of pure comparative negligence law. ***Tharpe v. Bunge Corp.***, 641 So. 2d 20, 24 (Miss. 1994), states that "theoretically, if a plaintiff is ninety-nine (99%) percent negligent and the defendant is only one (1%) percent negligent, the plaintiff is still entitled to recover the one percent (1%) attributable to the negligence of the defendant." ***Tharpe***, 641 So. 2d at 24. D-8 failed to articulate the ***Tharpe*** formula.

¶20. In ***Burton v. Barnett***, 615 So. 2d 580, 583 (Miss. 1993), this Court reversed the trial judge finding that the judge failed to adequately instruct the jury on the definition of comparative negligence. The problematic jury instruction, D-10, was as follows:

> You are instructed that if you believe from a preponderance of the evidence in this case that the plaintiff, Ronnie Burton, was guilty of negligence which proximately contributed to the

accident, and if you, further, believe from the evidence in this case that the defendant, Shirley A. Barnett, was, also, guilty of negligence which proximately contributed to the accident, and if you believe that Ronnie Burton is entitled to damages, it will be your sworn duty to reduce the amount of damages awarded to Ronnie Burton in the same proportion that the negligence, if any, of Ronnie Burton bears to the negligence of Shirley A. Barnett.

*Burton*, 615 So. 2d at 583. This Court found that;

"[d]espite the application of the law of contributory negligence to the facts of the case in Instruction D-10, no separate instruction defining comparative negligence was given to the jury. Further, Instruction C-5 does nothing to clarify the basic premise that the plaintiff's negligence is not a bar to recovery nor does it provide a format for an apportionment of fault or damages."

*Id.* Furthermore, this Court suggested that the following language should be added: "We, the jury, find plaintiff and defendant negligent and that plaintiff is responsible for % of the damages. We find plaintiff's damages to be $_." *Id.*

¶21. In the case *sub judice*, the jury instructions D-8 and P-12a were virtually identical to the instructions given in *Burton*, and, as in that case, are also insufficient instructions as to Mississippi's law on comparative negligence.

### 4. Whether the trial court erred in granting Massey's requested Instruction D-3.

¶22. Church asserts that the trial court erred in allowing the following jury instruction:

You are instructed that it was the duty of the Plaintiff, Gary W. Church to drive his motorcycle at a reasonable rate of speed under the circumstances then confronting him. ***It was also his duty to keep a reasonable lookout*** to the front and sides of his moving motorcycle ***to keep it under reasonable and easy control*** and anticipate and expect the presence of other vehicles which were also using 8th Street at the same time.

(emphasis added). Church asserts that these instructions were not plead nor put at issue at the trial. Massey asserts that he properly plead the general issue of contributory negligence and failure to keep a proper lookout or failure to keep his motorcycle under proper control were merely subparts of that general defense.

¶23. Rule 8 of the Mississippi Rules of Civil Procedure states that "a party shall set forth affirmatively . . . contributory negligence . . . and any other matter constituting an avoidance or affirmative defense . . ." In addition, the comment to that rule states that "[t]he purpose of Rule 8 is to give notice, not to state facts and narrow the issues as was the purpose of pleadings in prior Mississippi practice." *M.R.C.P. 8*

¶24. The trial court in the case *sub judice* found that "[t]here was some testimony concerning speed and lookout." No arguments were made by Church that he would be prejudiced by what he terms to be an "unpled issue." This Court has stated that "[m]otions for leave to amend are left to the sound discretion of the trial court. This Court reviews such determinations under an abuse of discretion standard and unless convinced that the trial judge abused his discretion, we are without authority to reverse." *McCarty v. Kellum*, 667 So. 2d 1277 (Miss. 1995)(quoting *Frank v. Dore*, 635 So. 2d

1369, 1375 (Miss. 1994)). Furthermore, this Court has stated in ***Taylor v. Welch***, 609 So. 2d 1225, 1232 (Miss. 1992) that "Rule 15(b) of the Mississippi Rules of Civil Procedure permits amendment of the pleadings to conform to the evidence, but also states that '[f]ailure to so amend does not affect the result of the trial of these issues." ***Taylor***, 609 So. 2d at 1232.

¶25. The parties presented sufficient evidence to support the questioned jury instruction. In addition, no surprise or prejudice confronted Church by presentation of these specific assertions of negligence. Massey affirmatively pled contributory negligence as required by Rule 8. Furthermore, this Court finds no error in specifically charging the jury to consider specific defenses available such as duty to keep a reasonable lookout or the duty to keep a vehicle under reasonable control.

### *5. Whether the trial court erred in refusing to excuse Juror Lula McDonald and substitute an alternate juror.*

¶26. Church asserts that the trial court erred in refusing to excuse a juror who had supposedly slept through much of the proceedings. On the second day of the trial, Church complained to the court that one of the jurors had been sleeping. The following discussion occurred out of the jury's presence, but on the record:

BY MR. ROGERS: Your Honor, while we're on the record, before the jury comes back, I have noticed that the juror in the back right here appears to be falling asleep.

BY THE COURT: That's not surprising to fall asleep. They fell asleep yesterday.

BY MR. ROGERS: And yesterday she was falling asleep, too. I understand, but it is her duty to stay awake and to listen. And I don't know whether she is going to keep falling asleep, but she has done that several times here, and I think -

BY JURY BAILIFF PITTS: She slept all morning.

BY THE COURT: Ms. Pitts -

BY JURY BAILIFF PITTS: I'm sorry.

BY MR. ROGERS: So, you know, this is probably not the appropriate time to bring it. But, I mean, if she keeps falling asleep -

BY THE COURT: If you will make a motion, if you feel like, I will handle it when a motion is made. Y'all picked the jury. This is the ones y'all wanted. You don't like the ones you wanted, do something to wake them up. I can't keep them awake. It is not my job to keep them a awake.

BY MR. ROGERS: I didn't say it was the Court's job to keep them awake, but I did want to put that in the record, because that is occurring. At some point in time if she is not paying attention to the evidence, I think it is an injustice to have her deciding the issues. But I just wanted to bring it up at this time, because if it continues then I will probably ask the Court to excuse he from deliberations, maybe, if she continues to do that. I don't even know what her name is.

BY THE COURT: I don't know what her name is, either.

BY MR. ROGERS: All right. I just wanted to make the record on that.

BY THE COURT: Bring the jury in, Ms. Pitts.

After both sides had rested, Church's counsel again brought up the issue of the sleeping juror:

BY MR. ROGERS: Judge, can I look at the little jury information cards, I want to see who that is that has been sleeping.

(BRIEF PAUSE.)

BY THE COURT: We need to start working on the instructions.

BY MR. ROGERS: Your Honor, I mentioned I had a motion. And I had brought this before the Court earlier this morning, I think. One of the jurors who was sitting in the box and as you face the back right hand corner, who I believe to be Leena McDonald, was asleep or sleepy or nodding her head off several times this morning. She also did that yesterday evening. And I am afraid that she did not, was unable to listen to the testimony this morning when the plaintiff was putting its case in chief on. And I think it would -- I would ask the Court when the jury goes to deliberation that the Court allow her to be excused and substitute the first alternate in her place. I just think that we could get a fairer panel of jurors with that.

BY THE COURT: Mr. Shannon?

BY MR. SHANNON: I frankly haven't noticed her sleeping. I am not going to say that she wasn't. But I think it probably would not be a very good precedent if the Court started excusing jurors because they are caught dozing occasionally, because if that rule would be required to jurors, what would you do about judges that occasionally doze? And as many people would tell you, that I am able to listen a lot better with my eyes closed there and not necessarily being asleep. I don't know that she was sleeping. I believe if she would have been asleep where she was not conscious to what was going on, she might would have noticeably moved in the chair. And I never noticed anything like that. But I think that would not be a very good -- I think there ought to be a higher standard for removing a juror off the panel of the jury and substituting the first alternate, which for some reason, apparently, Mr. Rogers wants on there, than occasionally dozing. There has been no reprimand made to the witness to stay awake or anything else. And then to suddenly say, well, you can't sit on the jury because counsel for plaintiff says that he noticed you dozing a couple of times.

BY THE COURT: Well, in every trial there is always a juror who has their eyes shut, as in this one. I don't know if they were asleep or not. But I don't feel like I can just, because a juror has their eyes shut, that I can kick them off the jury. So that request will be denied. All right. Let's meet in chambers immediately to start working on the instructions.

¶27. We have stated that "It is well founded that the trial judge has the discretion to excuse potential jurors for cause if the court believes the juror could not try the case impartially." ***Burt v. State***, 493 So. 2d 1325, 1327 (Miss.1986). "This Court will not lightly interfere with a finding of fact made by the trial judge in a criminal case, and it will reverse only when it is satisfied that the trial court has

erred in holding a juror competent, when this Court is clearly of the opinion that he was not a competent juror." ***Woodward v. State*** 533 So. 2d 418, 424 (Miss. 1988), *cert. denied*, 490 U.S. 1028 (1989).

¶28. In ***Woodward***, the trial court dismissed a juror who had been constantly falling asleep and was heavily medicated during the trial. ***Woodward***, 533 So. 2d at 424. In ***Hines v. State***, 417 So. 2d 924, 925 (Miss. 1982), this Court upheld the trial court's determination that even though the juror looked to be asleep he was actually awake enough to hear the testimony of the case. ***Hines***, 417 So. 2d at 925. In ***Norris v. State***, 490 So. 2d 839, 846 (Miss. 1986), this Court did not even require an affirmative finding that the juror was indeed awake. ***Norris***, 490 So. 2d at 846.

¶29. The matter of the sleeping juror causes us great concern. Due to the great responsibilities placed by our system of jurisprudence on the shoulders of our jurors, it is imperative that their duties be taken seriously. It is also of extreme importance that the attorneys and the court consider carefully the awareness of the jury. In this case, we need not address whether the juror in question was actually asleep since we reverse on other grounds and we presume that the same juror will not be reseated for service on remand.

## CONCLUSION

¶30. The trial court incorrectly applied the "Center of Gravity" analysis and erred in finding Alabama law applicable in dismissing Brewer State Junior College. Furthermore, the trial court erred in refusing to grant the separate instruction for failure to keep a reasonable lookout and in granting an incorrectly worded instruction of Mississippi's comparative negligence standard. The trial court did not err in granting the defendant's proffered instruction concerning the issues of reasonable lookout and control. We must therefore reverse and remand this case.

¶31. REVERSED AND REMANDED.

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND SMITH, JJ., CONCUR. LEE, C.J. AND McRAE, J., CONCUR IN RESULT ONLY.**

1. The "significant relationship" test is also often referred to as the "center of gravity" analysis. ***See, e.g., Boardman v. United Serv. Auto. Ass'n***, 470 So. 2d 1024, 1030 (Miss. 1985)(stating that "[w]e apply the center of gravity test to each question presented, recognizing that the answer produced in some instances may be that the law of this state applies and on other questions in the same case the substantive law of another state may be enforceable.")